CHICAGO DISTRICT ELECTRIC GENERATING CORPORATION
*v.* EVANS

[No. 17, 495.  Filed November 21, 1946.  Rehearing Denied
January 30, 1947.  Transfer Denied
March 24, 1947.]

282

Richard P. Tinkham and John F. Beckman, Jr., both of Hammond, for appellant.

Frank L. Greenwald, of Gary, for appellee.

CRUMPACKER, J.—The appellee is the owner and holder of a bearer bond in the principal sum of $1,000 executed by the appellant as one of a series of similar bonds evidencing a total debt of $15,000,000 secured by a mortgage or trust deed to the Continental Illinois National Bank & Trust Company and Frank F. Taylor, trustees. Upon learning that the series of bonds, of which his was one, had been called for payment by the appellant he presented said bond to the said trustees who refused to pay the same. He thereupon brought this suit, which is an action to recover on said bond, against the appellant as the maker thereof. In defense

the appellant contends (1) that it has paid the bond sued on, and (2) that the appellee is not a holder thereof in due course because at the time he acquired said bond he had notice that it had been previously dishonored and that the title of the prior holder thereof was defective.

The case was tried to the court upon these issues and resulted in a general finding for the appellee upon which judgment was entered in due course. The appellant predicates error on the overruling of its motion for a new trial which charges (1) the decision of the court is not sustained by sufficient evidence, and (2) the decision of the court is contrary to law.

The transcript of the record presents no factual dispute. On the face of the bond in suit appears the following words: "This bond is one of the bonds issued and to be issued from time to time under and in accordance with and . . . all equally secured by an indenture of mortgage or deed of trust . . . dated September 1, 1930, given by the Company to the Continental Illinois Bank and Trust Company, as Trustee and Frank F. Taylor, as Co-Trustee, *to which mortgage reference is hereby made for a description of the property mortgaged and pledged, the nature and extent of the security, the rights of the holders of said bonds and of the Company in respect to such security and the rights of the Trustee under the mortgage.* . . . At the option of the Company and upon notice and in the manner and with the effect provided in the mortgage, any or all of the bonds of Series A, of which this is one, may be redeemed by the Company . . . ." (Italics ours.)

The mortgage above referred to contains the following provisions: "Article V, Section 3. Notice of redemption having been given as provided in Section 2 of this article, and a sum in cash sufficient to redeem

the bonds so called for redemption having been deposited with the Trustee on or before the redemption date, the bonds so called, or the specified portions thereof, shall, on the date designated in such notice, become due and payable at said office of the Trustee at the redemption price stated in such bonds; . . . ."

"Article XII. . . . Bonds for the payment or redemption of which money shall have been set apart by or paid to the Trustee shall be deemed to be paid within the meaning of this article. . . . ."

"Article I, Section 13. . . . Upon receipt by the Company and the Trustee of evidence satisfactory to them of the loss or destruction of any outstanding temporary or definitive bond hereby secured, and of indemnity satisfactory to them, or in case of the mutilation of any such outstanding bond, upon surrender and cancellation of such bond and upon receipt of indemnity satisfactory to them, if requested, the Company in its discretion may execute, and the Trustee may authenticate and deliver, a new bond of the same series, maturity date and denomination and of like tenor, and bearing the same issue number (to which the Trustee may add a distinguishing mark), in lieu of such lost, destroyed or mutilated bond, as the case may be. . . . ."

The bond in suit was originally issued to the Farmers Mutual Automobile Insurance Company of Madison, Wisconsin, who reported to the trustees, early in July, 1933, that it had been stolen and asked that payment thereof be stopped. A record of "payment stopped" was made by the trustees, and in 1936 a duplicate bond was issued to the American Bonding Company, who presented an assignment of all interest therein from the Farmers' Mutual Automobile Insurance Company, the original holder. This duplicate bond was issued pursuant to Article I, Section 13 of the mortgage as

above set out and upon receipt of indemnity satisfactory to the trustee. It was identical to the original, including its serial number, but bore a secret mark so it could be distinguished therefrom. The entire issue was called for payment on January 9, 1939, and the trustees received from the appellant, some time prior thereto, a sufficient sum of money to pay the entire principal sum borrowed, together with premium and interest to the call date. When this money was disbursed by the trustee the duplicate bond was paid upon presentation, as the stolen original was still missing.

From July 2, 1933, to September 9, 1933, the appellee was in the investment securities business with offices at 11 South LaSalle Street, Chicago. Sometime during that period he bought the bond in suit from a man with whom he had never done any business previously—a "fly-by-night broker"—whose name he never knew. The appellee, at the time, was doing considerable business with this type of broker who made a practice of buying tax anticipation warrants and other securities from school teachers and contractors who needed or wanted immediate cash. Before completing the transaction the appellee called a Chicago Bond house and learned that the market on the bond in controversy was "72 bid and 75 asked," and thereupon bought it for cash at either 70½ or 71½.

On September 9, 1933, he borrowed $10,000 from one Simms McGuire on his promissory note and posted this bond with others as collateral security therefor. During the course of the years that followed he reduced this loan to $1,000 and in September, 1943, he learned for the first time that the bond in question had been called and he thereupon suggested to McGuire that he present it to the trustees for payment and use the money to pay the balance of his note. This McGuire did but the

bond was returned to him unpaid with a letter from the Continental Illinois National Bank and Trust Company, one of the trustees, a part of which we quote as follows: "When the bonds of this issue were called for redemption funds were deposited with us by the corporation for the payment of the new bond issued upon the filing of the bond of indemnity. That bond has been surrendered and paid and, accordingly, no funds are on deposit for the payment of the bond you hold."

The appellee shortly thereafter paid the balance due on his note to McGuire and the bond was returned to him and is now in his possession.

In support of its claim of payment the appellee asserts that according to the express terms of the mortgage under which the bond sued upon was issued, the trustees were constituted the bondholders' agents and not the agents of the maker and mortgagor, so that the appellant, by paying to said trustees on redemption the principal amount of its loan in full together with the premium and interest to the call date, fully discharged its liability on the bond in suit.

Three principles of law, pertinent to the question, are definitely established in Indiana and in other jurisdictions to the extent that they may be considered general rules: (1) When one buys a bond which states on its face that it is one of a series secured by a certain mortgage to which reference is made for a definition of the rights of the parties, such purchaser is charged with notice of the terms of such mortgage as effectively as if such terms were written into the bond itself. (2) Under the circumstances described in (1) the provisions of the bond and the mortgage constitute the bondholders' contract with the maker and if the mortgage appoints a trustee who is specifically authorized to accept payment for the bondholders, such

trustee is the agent of the bondholders and not the maker. (3) The payment of the indebtedness evidenced by a series of bonds to a trustee who is acting as the agent of the bondholders operates as payment to the bondholders and the obligation of the maker is discharged. *Comm. Credit Co.* v. *Seymour Natl. Bk., Admr.* (1938), 105 Ind. App. 524, 15 N. E. (2d) 118; *Morley* v. *University of Detroit* (1934), 269 Mich. 216, 256 N. W. 861; *Crosthwaite* v. *Moline Plow Co.* (1924), 298 F. 466; *Hall* v. *Goldsworthy* (1932), 136 Kan. 247, 14 P. (2d) 659; *Allan* v. *Moline Plow Co.* (1926), 14 F. (2d) 912; *Manchester* v. *Sullivan* (1930), 112 Conn. 223, 152 A. 134; *Will of Church* (1936), 221 Wis. 472, 266 N. W. 210.

When we apply these principles of law to the bond in suit and its mortgage security it is apparent that the Continental Illinois National Bank and Trust Company and Frank F. Taylor, Trustees, were the appellee's agents for the purpose of receiving payment on the bond he holds and the unqualified and unrestricted payment by the appellee of its full indebtedness to such agents would finally and completely discharge its obligation to its bondholders, including the appellee.

The appellee concedes this but contends that there is evidence in the record tending to prove that when the appellant redeemed the series of bonds, of which his is one, it directed the trustees to pay his portion of said redemption money to the holder of the duplicate bond and not to him and that the court so found the fact to be. Therefore, says the appellee, the trustees, as *his* agents, never received any money in discharge of the appellant's obligation to him. This contention, as far as the facts are concerned, rests solely upon the excerpt from the trustee's letter of December 2, 1943, to McGuire, which we have heretofore set out.

The competency of this letter for any purpose in connection with this law suit is extremely doubtful. It is purely the statement of one of the trustees who was not the agent of the appellant and nowhere does it appear that such trustee was authorized to speak for the appellant in the matter. As far as the appellant is concerned this letter appears to be mere hearsay and of no binding force but it was admitted in evidence without objection and, waiving its competency, it does have probative value.

It is well settled in this state that: "A party who permits incompetent evidence on a material issue to be introduced without objection cannot be heard to say on appeal that it should not be considered in determining if the finding is supported by the evidence. Its probative value, when so admitted, is for the court or jury to determine, notwithstanding such evidence might have been excluded if proper and timely objection had been made. This rule has been applied to hearsay and secondary evidence, as well as evidence rendered incompetent for other reasons." *Klinger* v. *Ottinger* (1939), 216 Ind. 9, 17, 22 N. E. (2d) 805. See also *Suit* v. *Hershman* (1918), 66 Ind. App. 388, 391, 118 N. E. 310; *Riehl* v. *The Evansville Foundry Association* (1885), 104 Ind. 70, 3 N. E. 633; *Metropolitan Life Ins. Co.* v. *Lyons* (1912), 50 Ind. App. 534, 98 N. E. 824; *Wagner* v. *Meyer* (1913), 53 Ind. App. 223, 101 N. E. 397; *Buttz* v. *Warren Mach. Co.* (1914), 55 Ind. App. 347, 103 N. E. 812.

Such being the law we are constrained to conclude there is evidence in the record supporting the court's finding that the appellant directed the trustees to disburse the redemption money to the exclusion of the appellee, and that brings in question the legal effect of its so doing.

The appellant owed but one debt, $1,000 of which was evidenced by two instruments, i. e., the original bond and the duplicate thereof. The trustees were the agents of the holders of both instruments for the purpose of receiving payment and had the appellant paid the redemption money to such agents without directions as to its disbursement between the two claimants, it would have thus discharged its obligation to both· and the responsibility for proper disbursement would have rested upon the trustees. But when the appellant deposited money with the trustees to the credit of one claimant exclusively it is clear that such trustees, as the agents for the other claimant, received nothing for their principal and a defense of payment, predicated upon the theory of agency, must fall.

The appellant next insists that the evidence discloses, as a matter of law, that the appellee did not act in good faith in purchasing the bond in suit and therefore is not a holder in due course. It is undisputed that this bond was stolen from the rightful owner early in 1933, and, as a matter of law, no one could acquire title thereto based on that event. The bond, however, is a negotiable instrument as defined by the law of this state and can be enforced against the maker by any holder in due course. § 19-407, Burns' 1933. The holder of a negotiable instrument who takes it before maturity, or its due date, for a valuable consideration, in the usual course of business, without notice of an infirmity in the instrument or defect in the title of the person negotiating same, is a holder in due course. *Rainier* v. *LaRue* (1925), 83 Ind. App. 28, 147 N. E. 312. "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the

infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." § 19-406, Burns' 1933.

The appellant concedes that the appellee bought the bond in suit for a valuable consideration, before its maturity, in the usual course of his business and without actual knowledge that it had been stolen from the true owner. It is urged, however, that because the appellee, an experienced bond broker, took the bond from a "fly-by-night dealer" whom he had never seen before and whose name he does not know, at a price slightly below the market, his action in taking the instrument amounted to bad faith. We do not think these facts are sufficient to show bad faith as a matter of law. Circumstances which will justify an inference that the purchaser of a negotiable instrument acted in bad faith must be pointed and emphatic and must lead directly and irresistibly to that conclusion. At best the facts in the present case disclose nothing more than circumstances calculated to awaken suspicion. That is not enough. *First Nat. Bank, etc.* v. *Garner* (1918), 187 Ind. 391, 118 N. E. 813, 119 N. E. 711.

The court in its final judgment allowed the appellee attorney's fees in the sum of $250. This was error. Neither the bond sued upon nor the mortgage provides for the allowance of attorney's fees to a bondholder and unless such provision is specifically made therein they cannot be allowed. *Gavin* v. *Miller* (1944), 222 Ind. 459, 54 N. E. (2d) 277.

The appellee is ordered to remit the attorney's fees allowed by the judgment and upon so doing said judgment is hereby affirmed.

NOTE.—Reported in 69 N. E. (2d) 627.