WILLIAM C. RAIBORN *v.* DON E. RAIBORN

73-54                                    495 S.W. 2d 858

Opinion delivered June 25, 1973

*Barber, Henry, Thurman, McCaskill & Amsler,* for appellant.

*Hall, Tucker & Lovell,* for appellee.

CARLETON HARRIS, Chief Justice. Along during the middle of May, 1971, William C. Raiborn, appellant herein, was visiting his son, Don E. Raiborn, appellee herein, at the latter's home in Pasadena, Texas. The two Raiborn families made a sightseeing trip to Galveston on Sunday, May 16. The trip was made in Don Raiborn's Oldsmobile, traffic conditions being "bumper to bumper" between Houston and Galveston. A number of quick stops were made during the trip, and the brakes were operating perfectly and normally. The next day, Don Raiborn was unable to start his Ford Thunderbird and he accordingly requested the father to bring the Oldsmobile around in front of the Thunderbird in order to get the Thunderbird started with jumper cables. Appellant complied with this request and, while doing so, stopped the Oldsmobile at least four times; there was no indication at all of

anything being wrong with the brakes. After the Thunderbird had been started, appellee backed it up in order to let his father move the Oldsmobile forward to get it out from in front of a neighbor's driveway. The son was fixing to shut the hood on the Thunderbird when he noticed a noise in the distributor; he then leaned over and felt of the distributor, looking away from the other car. The father, William C. Raiborn, moved the Oldsmobile forward, and the car struck the son, pinning him between the two automobiles. The senior Raiborn then backed the Oldsmobile away, applied his brakes, and stopped the car. Appellee received a broken leg and subsequently instituted suit against the father, seeking damages in the amount of $9,990.00, alleging that the father was negligent in failing to keep his vehicle under proper control, failing to keep a proper lookout, and failing to properly apply his brakes. The father answered with a general denial and further asserted that the injuries sustained were a result of negligence on the part of the son. On trial, following the testimony of Don Raiborn, appellant moved for a directed verdict on the basis that there had been no proof of any nature establishing negligence on the part of the father. This motion was denied by the court. Following the testimony of appellant, a directed verdict was again sought, and again denied by the court. The jury returned a verdict in the amount of $20,000, the court reducing it to the amount sought in the complaint ($9,990.00), and from the judgment entered in that amount, appellant brings this appeal. For reversal, it is first asserted that the court erred in refusing to direct a verdict for appellant, there being no evidence of negligence by the father. It is then asserted that the court erred in refusing to direct a verdict for appellant for the reason that, as a matter of law, appellee was guilty of contributory negligence. We proceed to discuss these points in the order named.

The contention of appellant is that the testimony reflected there was no negligence on his part, and he was entitled to a directed verdict. Of course, we can only consider the second motion, since appellant offered proof in his own behalf following the denial of the first motion. *Chrestman v. Kendall*, 247 Ark. 802, 448 S.W. 2d 22. We cannot agree that the court erred in denying the second motion, for we are of the opinion that the facts presented a jury question. There was no dispute but

that the brakes on the Oldsmobile were working properly the day before the accident occurred. As earlier stated, on the trip to Galveston, which was made in heavy traffic, the brakes were consistently used, without any indication that there was anything wrong. Likewise, appellant testified that on the occasion of the accident, in backing, and going forward, to get the Oldsmobile in position to connect jumper cables with the Thunderbird, he stopped at least four times, the brakes working normally each time. He said that after disconnecting the jumper cables, he got back into the Oldsmobile and, the Thunderbird having been backed up by his son, started the Oldsmobile forward to clear a driveway. The son was leaning over the front of the car with the hood up. Distance between the two cars at that time was approximately 15 to 18 feet and appellant stated that when he came within about 5 feet of the Thunderbird, he applied the brakes "and I seen there was no brakes there. Seems the pedal would go plumb to the bottom." He said when he started moving the car forward, he probably "mashed" down on the accelerator a little but that the car was just "creeping".[1] When the brakes failed to hold, he tried "pumping" but this was of no help. When asked if he did anything else, he replied that he did not. "There wasn't time. Can't throw one in park while it is rolling." After pinning the son between the cars, appellant backed up to release appellee, and again applied the brakes, stopping the vehicle. From the record:

"Q. When you backed the Oldsmobile up, you said you stopped it. Did you put on the brakes then?

A. Yes.

Q. Could you stop it with the brakes?

A. Yes, it stopped.

Q. Did they work all right then?

A. Yes, sir."

Appellant, a retired minister, testified that he had mechanical experience, having worked on, and repaired

[1]Appellee testified, "I was hit. The Oldsmobile reared up inside the grill on the Thunderbird."

automobiles, all of his life, including brake systems. He said that after the accident, he examined the master cylinder on the Oldsmobile and "found the cup in the master cylinder was faulty when it applies the pressure to the breaking system. It had a little crack right in the back of the cup." The witness stated that this crack would allow the fluid to "come back into the master cylinder chambers instead of applying it to the brake shoes." Appellant said that he replaced the cup, replaced the master cylinder, and tested the brakes, finding them in order.

The son, Don Raiborn, offered no evidence as to how the accident occurred, other than he was struck by the car, and it is argued that all of the evidence reflects that there was no negligence on the part of the father. It is pointed out that the use of the Oldsmobile the day before, and on the day in question (prior to the accident) when the brakes were working perfectly, left appellant without any warning that there was anything wrong with the braking system, and the court should have directed a verdict in his behalf.

Appellant overlooks the fact that there was no testimony in this case except from the two principals, and we have said that the testimony of a party to a suit is not to be treated as undisputed in testing the legal sufficiency of the evidence. See *Hales & Hunter Co.* v. *Wyatt,* 239 Ark. 19, 386 S.W. 2d 704, and *Turchi* v. *Shepherd,* 230 Ark. 899, 327 S.W. 2d 553. In the last cited case, we stated:

> "Of course, the testimony of a party to the litigation is considered disputed as a matter of law, and therefore, standing alone, *will not support a peremptory instruction in his favor* [our emphasis], but such testimony constitutes substantial evidence to support a jury verdict; * * *".

Since the testimony of William Raiborn cannot be considered as undisputed, it follows from that fact alone that a directed verdict would not have been proper. Actually, there were circumstances which presented a jury question. Certainly, it is noticeable that the brakes on the automobile on the date of the accident worked perfectly at least four times just prior to the accident, and apparently worked perfectly when appellant backed up and applied his brakes following the accident. According to

appellant, the car that he regularly drives is a Chrysler (1962), which is operated by push button located on the left hand side of the dash, while the shift in the Oldsmobile is on the steering column. In other words, he was accustomed to operating a different type of automobile, and the jury might have thought that, intending to put his foot on the brake, he hit the accelerator, which would account for the force of the blow, as testified to by appellee. It also appears that no effort was made to use the emergency brake. Of course, for that matter, a jury, as we have pointed out many times, is not required to believe everything a witness says, and though members of the jury might not consider the witness a deliberate falsifier, they could well consider that human nature frequently causes one to see the facts on a basis favorable to himself. The court did not err in permitting the case to go to the jury.

As to the second point, there is little to be said. Under Texas substantive law which applies in this case, a defense of contributory negligence is an absolute defense to a cause of action. *Jones* v. *Smith,* (Court of Civil Appeals of Texas) 466 S.W. 2d 47. It is first argued that appellee was under a duty to keep his brakes in proper order, adequate to control the movement of, and to stop and hold such vehicle. Vernon's Ann. Civ. St. Art. 67, Old Uniform Act Regulating Traffic on Highways, § 132, Brakes. However, it was, of course, not established that faulty brakes were the cause of the accident (the jury apparently found otherwise), and as heretofore pointed out (if the brakes were faulty), there was no warning, i.e., no more warning to appellee, owner of the car, than to appellant, driver of the vehicle. It is also argued that Don Raiborn was guilty of contributory negligence in walking around in front of the Thunderbird and turning his back on appellant, knowing that appellant was going to drive the Oldsmobile forward. We certainly cannot agree that this was negligence as a matter of law. Rather, it was a fact question for the jury to pass upon. In *Blissett* v. *Frisby,* 249 Ark. 235, 458 S.W. 2d 735, we said:

"The verdict of the jury was a general one. It was rendered upon instructions relating to negligence, proximate cause and comparative negligence, and preponderance of the evidence, of which appellant does not complain. Resolution of conflicts in testi-

mony in a law case is not within the province of an appellate court. [Citing cases]. It is fundamentally a jury function, and a verdict usually is conclusive. [Citing cases]. Especially is this so where questions of *negligence, contributory negligence and credibility* of witnesses are involved."

The jury was correctly instructed as to the defense of contributory negligence, and it found contrary to appellant's contention.

Affirmed.