George RUSSELL *v.* Susie PRYOR, Bill PRYOR,
David PRYOR, Elinor OZMENT, and
Cornelia LINDSEY

77-282 · 568 S.W. 2d 918

Opinion delivered July 17, 1978
(Division II)

*Anderson & Crumpler,* for appellant.

*Julian D. Streett,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellant Russell was the owner of lands lying to the west and to the south of property owned by appellees. Thus, there were two common boundary lines. In 1971 and 1972, appellant engaged James Magsby, Morris Thompson and Tiny Ford to cut timber on his land. Appellees filed this action against appellant, International Paper Company, Southern Pulpwood Company, Arkansas Pulpwood Company, Morris Thompson and James Magsby in July, 1974. They alleged that Thompson, as employee and agent of Southern Pulpwood Company and International Paper Company and Magsby, as employee and agent of Arkansas Pulpwood Company and International Paper Company, had unlawfully cut and removed timber from the lands of appellees (hereafter called the Pryor land) at the direction and request of appellant Russell. It was alleged that the defendants wilfully trespassed and cut and removed the timber in violation of Ark. Stat. Ann. § 50-105 (Repl. 1971), and that appellees were entitled to treble the value of the timber cut. Appellees also alleged that they were entitled to double the amount of the timber cut and that the Pryor land had been permanently damaged to the extent of $50 per acre on 46 acres from which the timber was cut. The prayer sought recovery of treble damages under Ark. Stat. Ann. § 50-105 or, alternatively, double the value of the timber cut, or in the alternative, for the value of the timber cut as damages for its conversion and $2,300 for permanent damage to the land. Tiny Ford was added as a party defendant in June, 1975. Trial was had on February 5, 1976.

After the evidence had been presented and the jury had been instructed, the jury returned its verdict by answering interrogatories submitted to it. Its answers, so far as they are material, follow:

## INTERROGATORY NO. 1

"Do you find, from a preponderance of the evidence, that Morris Thompson cut and removed from the Pryor land without the approval or knowledge of the Pryors?

Answer "Yes" or "No"        *Yes*

## INTERROGATORY NO. 2

If your answer to Interrogatory No. 1 is "Yes" then answer this question:

Do you find, from a preponderance of the evidence, that the cutting and removal of the Pryor timber by Morris Thompson was done at the direction and advice of George Russell?

Answer "Yes" or "No"        *Yes*

## INTERROGATORY NO. 3

If your answer to Interrogatory No. 2 is "Yes" then answer this question:

Do you find, from a preponderance of the evidence, that George Russell acted with the intention of depriving the Pryors of the value of the timber cut and removed from their land?

Answer "Yes" or "No"        *Yes*

## INTERROGATORY NO. 4

Do you find, from a preponderance of the evidence, that Tiny Ford cut and removed timber from the Pryor land without the approval or knowledge of the Pryors?

Answer "Yes" or "No"        *Yes*

## INTERROGATORY NO. 5

If your answer to Interrogatory No. 4 is "Yes" then answer this question:

Do you find, from a preponderance of the evidence, that the cutting and removal of the Pryor timber by Tiny Ford was done at the direction and advice of George Russell?

Answer "Yes" or "No"        *No*

(Interrogatory No. 6 was to be answered only if No. 5 was answered "Yes.")

## INTERROGATORY NO. 7

If you have answered either Interrogatory No. 1 or Interrogatory No. 4 "Yes" then answer this question:

What do you find, from a preponderance of the evidence, to be the value of the timber as saw logs at the time it was cut and removed from the Pryor land?

*$4,400.00*

In spite of the jury verdict, the trial court entered judgment for $4,400 against George Russell, Morris Thompson and Tiny Ford, jointly and severally, and entered judgment against Russell in the additional sum of $8,800.

Russell filed a motion for new trial on the ground that the answers to the interrogatories submitted to the jury were inconsistent. The trial judge refused to grant a new trial, but entered its judgment in spite of the jury verdict for the reasons set out in its judgment, i.e.,:

"After the jury was discharged, the Defendant, George Russell, moved for an order granting a new trial on the grounds that the answers to interrogatories are inconsistent with each other. Said Motion for a New Trial is hereby overruled because the Court finds that Interrogatories No. 5 and 6 should not have been submitted to the jury since the evidence was without dispute that Morris Thompson showed Tiny Ford where to cut and that as a matter of law, the jury's answers to Interrogatories No. 5 and 6 would have to be the same as the answers to Interrogatories No. 2 and 3 and they are by the Court held to be the same."

Appellant admits that the court may have been correct in stating that Morris Thompson showed Tiny Ford where to cut, but says that the jury could and did find that the Pryor timber cut by Ford was not done at the direction or advice of

appellant Russell. He refers to his own testimony in which he had stated that he had shown his property lines to Morris Thompson, James Thompson and Tiny Ford. He had testified that he showed them all the boundary lines between him and the Pryors "not just once" but several times. He said that he never took them across the Pryor land and claimed it as his land, that he did not tell them to cut across the Pryor land over to Norwood's west line (which was the Pryor east line), and that he had showed them his line and told them to stop there. James Magsby, a man employed by appellant to cut timber at approximately the same time as Thompson and Ford, testified that appellant had shown him the true boundaries and told him not to cut across that line.

Appellant says that this testimony was clearly a sufficient basis for the jury's finding that Ford did not cut timber from the Pryor land at his direction and advice. Appellant claims that, in effect, the court's action amounted to a judgment notwithstanding the verdict and points out that when such a judgment is rendered, the testimony must be undisputed so that the court might declare as a matter of law, that the party in whose favor the judgment was entered was entitled to it, citing *Satterfield* v. *Rebsamen Ford, Inc.,* 253 Ark. 181, 485 S.W. 2d 192, in which *Scharff Distilling Co.* v. *Dennis,* 113 Ark. 221, 168 S.W. 141 was quoted. Appellant also refers us to *Williams* v. *Curtis,* 256 Ark. 237, 506 S.W. 2d 563, in which we said that the governing rule on judgments n.o.v. and directed verdicts was the same. It was there pointed out that, in testing whether there is substantial evidence, the evidence and all reasonable inferences deducible therefrom should be viewed in the light most favorable to the party against whom a verdict would be directed and if there is any conflict in the evidence or, where the evidence is not in dispute but is in such a state that fair-minded men might draw different conclusions therefrom, it is error to direct a verdict.

It does seem that there was evidence from which the jury could find that Ford did not cut the timber on the Pryor land on the advice or direction of Russell if Russell showed Thompson and Ford the true lines, or if he showed Thompson the true lines and Thompson showed Ford the wrong boundary. Appellees say that it is clear from the evidence that

a jury question was presented as to whether appellant instructed either Thompson or Ford to cut on the property owned by the Pryors and that the jury could easily have found that both Thompson and Ford cut timber from the Pryor property but that only Thompson did so at the direction and advice of George Russell. It also appears certain, as appellees say, that it is clear that the jury found that Russell had shown Thompson incorrect lines which included the Pryor land from which he and Ford had cut timber. Ford testified that Russell told him that he had shown the location of the lines to Morris Thompson and his brother.

Appellees argue that the fact that the jury found that Thompson acted at the direction and advice of Russell, and that Ford did not, is really of no consequence because the jury found both Thompson and Ford cut and removed timber from the Pryor land without the approval or knowledge of the Pryors and that Russell acted with the intention of depriving the Pryors of the value of the timber cut and removed from their land. It is appellees' theory that these findings, along with the finding that Thompson acted on Russell's advice made all three joint tortfeasors and as such, jointly and severally liable to the Pryors, because they acted concurrently, even though some of them may have acted independently. For this reason, appellees say that it is immaterial that the court ruled that Interrogatories 5 and 6 should not have been submitted because the answers to the interrogatories are not inconsistent with a determination that Thompson, Ford and Russell were joint tortfeasors and, therefore, Russell would be liable for the acts of both Thompson and Ford upon the finding that either was acting at the direction and advice of Russell. Appellant, in turn, concedes that appellant could be held jointly and severally liable with Thompson and Ford for actual damages, but not punitive damages.

This is not a situation where the trial court amended a verdict incorrectly expressed under a mistake of law, in order to conform it to the manifest intention of the jury, such as we had in *Traylor* v. *Huntsman,* 253 Ark. 704, 488 S.W. 2d 30 and in *Trailmobile, Inc.* v. *Robinson,* 227 Ark. 915, 302 S.W. 2d 786. On the face of the verdict, the answers to the interrogatories appear to be inconsistent in view of appellant's testimony.

This would not be a matter of concern if the verdicts had been rendered in two cases consolidated for trial. See *Rudolph* v. *Mundy*, 226 Ark. 95, 288 S.W. 2d 602; *Brown* v. *Parker*, 217 Ark. 700, 233 S.W. 2d 64; *Green* v. *West Memphis Lumber Co.*, 192 Ark. 1177, 91 S.W. 2d 261. That is not the case here. The answers as to Thompson on the one hand and Ford on the other can hardly be reconciled without surmise or conjecture. Conflicting findings destroy one another and leave no findings on the issue. *Whaley* v. *Angelina Casualty Co.*, 423 S.W. 2d 448 (Tex. Civ. App., 1967).

We cannot agree that the verdict should have been permitted to stand on the basis that the answers are not inconsistent, when all the testimony of each witness is reviewed. In doing this, we also consider that the witnesses were all parties, whose testimony is not to be taken as uncontradicted. *Raiborn* v. *Raiborn*, 254 Ark. 711, 495 S.W. 2d 858; *Woodward* v. *Blythe*, 246 Ark. 791, 439 S.W. 2d 919. Morris Thompson first testified that Ford was present when he talked to George Russell, but then said that he did not know definitely that he was there, and stated that he was not, when Russell showed him a corner. Ford testified that he started cutting when Thompson did. He said that Russell never showed him any lines but told him that he had shown the lines to the Thompson brothers. He testified that he cut where Morris Thompson and his brother told him to. He didn't know whether Russell ever told him where to cut, but he was present when Russell was showing Thompson where to cut some trees down, when they were coming in from Fook's farm, which lies west of the Pryor land and north of the Russell land. Most of the time Thompson and Ford were cutting "alongside each other." We do not see how the jury could have consistently found that Thompson cut the timber at the direction and advice of Russell and that Ford did not, when the entire testimony of Russell, Thompson and Ford is considered together in the light most favorable to the jury verdict. The trial judge obviously did not think so, because, in rendering judgment, he stated that the answer to Interrogatories No. 5 and No. 6 would have to be the same as that to Interrogatories No. 2 and No. 3. They were, by the court, held to be the same. Appellees have not pointed out the testimony supporting their contention in this regard.

This issue then turns upon the question whether the inconsistent answers affected the result. The trial judge did not think so, but we disagree, although we feel that it is the duty of the trial judge to harmonize apparent inconsistencies in arriving at a judgment, if possible to do so. See *Woodruff* v. *Webb,* 32 Ark. 612. But the jury's intention must be capable of ascertainment with certainty. *Traylor* v. *Huntsman,* supra. The ultimate test here is whether the conflict is such that one answer would require a verdict for the plaintiff and the other a verdict for the defendant. *Missouri Pacific Railroad Co.* v. *Tide LPG., Inc.,* 462 S.W. 2d 106 (Tex. Civ. App., 1970); *Turner* v. *Victoria County Electric Cooperative Co.,* 428 S.W. 2d 484 (Tex. Civ. App., 1968). In assessing the verdict and the evidentiary basis for it, we must remember that the answers to these interrogatories determined the question of the award of punitive or exemplary damages against appellant: From one answer, punitive damages were clearly justified. From the other they were not. It is not a sufficient answer to say that the interrogatory to Ford should not have been submitted, because Russell testified that he showed the lines to the Thompsons and Ford, but Ford said that he did not and Thompson was not sure about the matter.

The real question here is whether, in spite of the answer given to Interrogatory No. 5, the judgment entered was proper. *West* v. *Matteson-Southwest Co.,* 369 S.W. 2d 496 (Tex. Civ. App., 1963). Appellees say that it was, because the defendants were joint tortfeasors. They are correct in their assertion that parties need not act in concert to be liable as joint tortfeasors. *Applegate* v. *Riggall,* 229 Ark. 773, 318 S.W. 2d 596. Sustaining appellees' position might be easier if the question of punitive damages was not involved. In their complaint, appellees sought recovery of punitive damages against all the defendants. Even though punitive damages were awarded against appellant only, they were a multiple of the actual damages. Consequently, appellant was held liable for double the amount of the total value of the timber cut by both Thompson and Ford. The value of the timber cut by Ford and that cut by Thompson were not separately determined. If Ford did not act at the direction or on the advice of Russell, then Russell would not be liable for multiple damages. Thus *Lewis* v. *Mays,* 208 Ark. 382, 186 S.W. 2d 178 does not control

except insofar as Thompson's activities are concerned. In that case, the employer who engaged a timber cutter was held liable for the acts of the timber cutter who cut timber from the land of a neighbor, without regard to the status of the cutter as an employee or independent contractor, since liability for the trespass was based on the action of the timber cutter, "by the advice or direction" of the employer. The holding in *Hinton* v. *Bryant,* 236 Ark. 577, 367 S.W. 2d 442 is to the same effect. These cases would, of course, govern if the jury had found that Ford acted upon the advice or direction of Russell. If Ford did not act upon the advice or direction of Russell, Russell would not be liable for the punitive damages, assuming that Russell did, as he said, show Ford the true lines or if Ford acted upon the statements of Thompson after Russell had shown Thompson the true lines. The assessment of treble damages against appellant should not rest upon such a fragile foundation as the verdict in this case.

Since the jury verdict cannot be reconciled and since the verdict as to damages is not divisible, the trial court erred in denying the motion for new trial.

Appellant also contends that the court erred in refusing to submit interrogatories and an instruction requested by appellant. We cannot agree that the trial court erred in refusing the interrogatories or the instruction requested by appellant. The interrogatories and instruction would have left the question whether double damages or treble damages were to be recovered from Russell, if the jury held against appellant on the question of liability, without any guidelines whatever. It seems to be the position of appellant that the matter lies simply in the untrammeled discretion of the jury. We do not agree with this position. The distinction is a tenuous one, is rather difficult to describe, and is productive of insuperable confusion.

It is true, as pointed out in *Stair* v. *Jones,* 223 Ark. 882, 269 S.W. 2d 297, that there are three separate measures of damage available to one who seeks to recover for timber taken from his land by a trespasser. They are: treble damages under Ark. Stat. Ann. § 50-105 (Repl. 1971); double damages under Ark. Stat. Ann. § 54-203 (Repl. 1971); and the common law rule of simple damages.

The trial court awarded treble damages against Russell, on the basis that Thompson (and Ford by reliance on Thompson) acted on the advice and direction of Russell and that Russell acted with the intention of depriving the Pryors of the value of the timber cut and removed from their land in answer to Interrogatories No. 2 and No. 3. The interrogatory submitted by the court was appropriate to Ark. Stat. Ann. § 54-203 which is based upon, and a part of, statutes pertaining to larceny of trees, timber, etc., i.e., §§ 41-4211 — 41-4225 (Repl. 1964).[1] *McLouth* v. *General Telephone Co.of the Southwest,* 164 F.S. 496 (W.D. Ark. 1958). Proof of a violation of § 41-4221 of which § 54-203 is a part is sufficient if it shows that the trespasser entered upon the land without lawful authority and wilfully and knowingly cut down standing or growing trees. *Smith* v. *State,* 127 Ark. 218, 191 S.W. 913. Ark. Stat. Ann. § 41-4222 prohibits the removal of such trees or logs, timber, etc., with intent to convert the same to the trespasser's own use. Thus, an affirmative answer to the question whether Russell intended to deprive the owner of his property seems appropriate to this statute. Sec. 54-203 has been held to be applicable where the trespasser had no probable cause to believe that the land on which he committed the trespass was his own. *Rosengrant* v. *Matthews,* 55 Ark. 440, 18 S.W. 541. We have also held that scienter is essential to the application of the statute. *Parker* v. *Fenter,* 216 Ark. 398, 225 S.W. 2d 940. The award of treble damages should be confined to cases characterized by wantonness, wilfulness or evil design. *Upton* v. *Wimbrow,* 148 Ark. 408, 230 S.W. 277. It has also been held that the treble damage statute applies where the trespasser cuts timber from the lands of another, knowing that he had no authority, and acting knowingly and unlawfully. *Fogel* v. *Butler,* 96 Ark. 87, 131 S.W. 211.

But, according to one of our decisions interpreting § 50-101 in the light of previous decisions, we held that treble damages may only be invoked where one cuts timber with the intention of depriving the true owner of the value thereof. *Callaway* v. *Perdue,* 238 Ark. 652, 385 S.W. 2d 4, 13 ALR 3d 1300. There we pointed out that our previous decisions had established the necessity that the trespasser hold an evil intent or act in bad faith before being liable for punitive

---

[1]These sections have now been repealed. Act 928 of 1975, § 3.

damages, even though the words of the statute do not so indicate. Thus, the interrogatory submitted left the trial judge with an untrammeled discretion in the matter.

Perhaps the best solution to the problem, when interrogatories are to be used, is to phrase the inquiry in the specific language of the two statutes as interpreted by this court separately and to instruct the jury to answer only that interrogatory which seems to them to be most applicable to the evidence.

We should mention one other matter in connection with this case. When the case was submitted, we found an apparent non-flagrant violation of Rule 9. We noted that a motion for new trial was not abstracted and that the judgment itself was not abstracted. Since the record has been reabstracted, it is clear that the deficiency was not flagrant. It is now obvious that the motion for new trial was oral and the making of the motion and the grounds alleged were stated in the judgment and that the pertinent part of the judgment was quoted verbatim in appellant's original brief. This information was included in the quoted portion of the judgment. The assertions in appellant's original brief relating to the motion for new trial and the court's judgment were conceded by appellees in their brief, without any question whatever. Thus, the situation was unlike that in *Manes* v. *M.O.V.E. Inc.*, 261 Ark. 793, 552 S.W. 2d 211, where the detailed findings of fact or findings of mixed law or fact were necessary to an understanding of the questions presented to this court, but were not mentioned in the abstract or brief. It is more like the situation in *Goodloe* v. *Goodloe*, 253 Ark. 550, 487 S.W. 2d 593, where it developed that the abstract was sufficient to determine the question. This seemed to us to be quite possible when we permitted reabstracting by an unpublished per curiam order entered April 3, 1978, saying that we did not consider such a deficiency to be so flagrant that it would justify affirmance and that an unreasonable or unjust delay would not result by allowing 30 days for revision and supplementation of appellant's abstract and reprinting of his brief, all at the attorney's expense.

The judgment is reversed and the cause remanded for a new trial.

We agree. HARRIS, C.J., and BYRD and HOLT, JJ.