**Marion R. WRIGHT,**
**Defendant-Appellant,**

v.

**Fred REUSS, Plaintiff-Appellee.**

**No. 1–1081A298.**

Court of Appeals of Indiana,
First District.

May 6, 1982.

---

Bobby Jay Small, Indianapolis, Steven M. Bush, Ewbank, Meyer & Kramer, Lawrenceburg, for defendant-appellant.

Michael A. Douglass, Brookville, for plaintiff-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Marion R. Wright (Wright) appeals from the judgment of the Franklin Circuit Court after trial by jury which awarded Fred Reuss (Reuss) sixteen thousand five hundred dollars ($16,500) for timber cut by Wright and one thousand four hundred dollars ($1,400) for damage to Reuss's land. We affirm.

## FACTS

Wright, an unregistered timber buyer, entered into an agreement in the winter of 1978 with Michael and Rita Schwab (Schwabs) to harvest timber on the Schwabs' real estate. Mr. Schwab orally informed Wright of the boundary of their (Schwabs') property. Schwab described the boundary to Wright as running along a hilltop to the new fence which turned and went through the woods. Schwab did not walk the boundary lines with Wright. Also, Wright did not talk with Schwabs' neighbors or check the legal description of Schwabs' land to ascertain the boundaries of their property. Wright began the logging process, during which he would cut the trees, load them, sell them, and then pay the Schwabs an agreed purchase price. The logging was stopped, however, when it was discovered that Reuss owned a portion of the woods in which the logging had taken place. It was discovered that Wright had cut approximately fifty to sixty trees on Reuss's property.

Reuss brought this action against Wright and the Schwabs on February 29, 1980, requesting both compensatory and punitive damages. Both Wright and the Schwabs filed motions for summary judgment on the punitive damages issue. The trial court on

July 21, 1980, ordered Reuss's prayer for punitive damages stricken because it considered the treble damages described by Ind.Code 25–36.5–1–17[1] to be punitive damages in situations like the case at bar. The trial court also granted the Schwabs' motion for summary judgment on Reuss's claim against them. Reuss's action against Wright was tried by a jury which returned the following verdict:

"We, the jury, find for the Plaintiff, Fred Reuss, and against the Defendant Marion R. Wright, and determine the value of the trees cut to be $5,500.00 dollars, and we further find that the property of Plaintiff, Fred Reuss, has been damaged in the amount of $1,400.00."

The trial court entered judgment on the verdict on March 31, 1981:

"This matter having been tried to a jury, and such jury on March 26, 1981 having determined that the value of timber taken from the property of plaintiff by defendant to be Five Thousand, Five Hundred Dollars ($5,500.00), the Court now, pursuant to I.C. 25–36.5–1–17, enters Judgment for plaintiff and against defendant for Sixteen Thousand, Five Hundred Dollars ($16,500.00), that being three (3) times the value of such timber taken, plus One Thousand, Four Hundred Dollars ($1400.00), that being the jurors' determination of damage to plaintiff's property, plus costs."

## ISSUES

We have restated the issues which Wright raises on appeal to be

1. Whether the trial court erred by failing to instruct the jury of the statutory provision of Ind.Code 25–36.5–1–17 which authorizes treble damages for cutting timber which has not been purchased.

2. Whether the trial court erred in refusing Defendant's Tendered Instruction No. 5 which stated that the defendant must have intended to have deprived the true owner of the value of the cut timber in order for punitive damages to be recovered.

3. Whether the trial court erred in refusing Defendant's Tendered Instruction No. 6 which stated that one acting in good faith is not liable in treble damages.

4. Whether there is sufficient evidence to support the award of one thousand four hundred dollars ($1400.00) for injury to Reuss's land.

## DISCUSSION AND DECISION

*Issue One*

■ Wright first contends the trial court erred by failing to instruct the jury of the statutory provision of IC 25–36.5–1–17. We will not discuss this issue for we deem it to have been waived. Although Wright orally requested the Court to advise the jury that any award given by the jury would be tripled by the trial court pursuant to IC 25–36.5–1–17, he failed to tender a written instruction on the subject. As our supreme court stated in *Miller v. State*, (1978) 267 Ind. 635, 372 N.E.2d 1168, 1171:

"This court has previously held that if a party requests the court to instruct the jury, such instruction should be tendered in writing. Failure to tender an instruction in writing waives the error, if any, of not giving the requested instruction. *Short v. State*, (1968) 250 Ind. 459, 237 N.E.2d 258; *In re Sobieski*, (1965) 246 Ind. 222, 204 N.E.2d 353."

*Accord, Anderson v. Taylor*, (1972) 154 Ind. App. 217, 289 N.E.2d 781 (failure to tender an instruction on some pertinent point which the trial court did not cover and the party desires to be covered constitutes waiver). Consequently, Wright has waived this error.

*Issues Two and Three*

■ Wright contended his cutting of the trees was a good faith mistake since he believed, on the basis of the landowner's description of the boundaries, that he was cutting trees on land belonging to the

---

1. Ind.Code 25–36.5–1–17 states: "A person who cuts or causes to be cut any timber which he has not previously purchased shall, in lieu of the normal penalties of this chapter, pay the owner of the cut or appropriated timber three (3) times the stumpage value of the timber."

Schwabs. Wright tendered Defendant's Tendered Instruction No. 5 which stated, "The plaintiff may only recover treble damages where the defendant cuts timber with the intention of depriving the true owner of the value thereof," Record at 267, and Defendant's Tendered Instruction No. 6 which stated, "If you find the defendant was acting in good faith, then the plaintiff may not recover treble damages. One acting in good faith is not liable in treble damages." Record at 267. The trial court refused these tendered instructions. On appeal, Wright contends the trial court erred by refusing his tendered instructions because they were correct statements of the law not covered by any other instructions and there was substantial evidence to support good faith and absence of any intent. Specifically, Wright argues that since IC 25–36.5–1–17 is in lieu of the normal criminal penalties provided in Ind.Code 25–36.5–1–10, all the essential elements of the criminal offense must be established before the alternate sanction of treble damages is available. Therefore, he concludes, there must be a *mens rea* requirement, as contrasted with strict liability, which would permit the good faith mistake of fact defense. The issue before us, then, is whether IC 25–36.5–1–17 requires an intent on the part of the person who cuts timber without having previously purchased it or whether IC 25–36.5–1–17 is a strict liability statute.

The question involved in this case is one of first impression in Indiana. We have found no cases in Indiana which have dealt with the treble damages provision of IC 25–36.5–1–17. Courts of other jurisdictions have required an intentional, wilful, malicious or knowing cutting of timber without the owner's permission before imposing double or treble damages. *Vick v. Tisdale,* (1975) 56 Ala.App. 565, 324 So.2d 279; *Russell v. Pryor,* (1978) 264 Ark. 45, 568 S.W.2d 918; *Callaway v. Perdue,* (1964) 238 Ark. 652, 385 S.W.2d 4; *Drewry v. Welch,* (1965)

236 Cal.App.2d 159, 46 Cal.Rptr. 65; *Crofoot Lumber, Inc. v. Ford,* (1961) 191 Cal.App.2d 238, 12 Cal.Rptr. 639; *Doran v. Rugg,* (1960) 22 Conn.Sup. 189, 164 A.2d 859; *Earl v. Fordice,* (1962) 84 Idaho 542, 374 P.2d 713; *Blaisdell v. Daigle,* (1959) 155 Me. 1, 149 A.2d 904; *Governale v. City of Owosso,* (1975) 59 Mich.App. 756, 229 N.W.2d 918; *Mekulich v. Liddycoat,* (1974) 268 Or. 160, 519 P.2d 378; *Amey v. Hall,* (1962) 123 Vt. 62, 181 A.2d 69; *Ventoza v. Anderson,* (1976) 14 Wash.App. 882, 545 P.2d 1219. However, many of those cases are not of any assistance to us since the statutes involved in the cases are dissimilar to our statute. For instance, the statutes involved in *Vick v. Tisdale, supra,* and *Blaisdell v. Daigle, supra,* expressly provided that the trespass be wilful or knowing. In *Doran v. Rugg, supra,* and *Amey v. Hall, supra,* the defendant was liable for treble damages if he cut the timber unless he was guilty due to mistake, for which he would be liable only for single damages. Although the statutes in *Governale v. City of Owosso, supra,* and *Ventoza v. Anderson, supra,* do not expressly require the cutting of the timber without the owner's consent to be wilful or knowing, they do provide for avoidance of treble damages and imposition of single damages if the trespass was involuntary and casual or the trespasser had probable cause to believe he was on his own land. Similarly the statutes in *Drewry v. Welch, supra, Crofoot Lumber, Inc. v. Ford, supra,* and *Mekulich v. Liddycoat, supra,* provide for treble damages unless the trespass was casual or involuntary or the defendant had probable cause to believe he was on his own land and then double damages would be awarded.

Wright has cited us to *Russell v. Pryor, supra,* and *Callaway v. Perdue, supra,* for support of his argument that intent is required under IC 25–36.5–1–17. In both *Russell* and *Callaway,* the statute [2] involved

---

2. Ark.Stat.Ann. § 50–105 provides in part:

"If any person shall cut down, injure, destroy or carry away any tree placed or growing for use or shade, or any timber, rails or wood, standing, being or growing on the land of an-

other person, or shall dig up, quarry or carry away any stone, ground, clay[,] turf, mold, fruit or plants or shall cut down or carry away, any grass, grain, corn, cotton, tobacco, hemp or flax, in which he has no interest or right, stand-

did not expressly require an intentional trespass. However, the Arkansas Supreme Court in *Callaway*, held that a necessary element to justify treble damages for the trespass was intent of wrongdoing which could be inferred from the carelessness, recklessness, or negligence of the offending party. Similarly, in *Earl v. Fordice, supra*, the Idaho Supreme Court stated that although the Idaho timber statute did not require the act of cutting or removing timber be done wilfully or intentionally, it had previously adopted such a rule in *Menasha Woodenware Co. v. Spokane International Ry. Co.*, (1911) 19 Idaho 586, 115 P. 22. Although such interpretations seem to be in accordance with the majority of jurisdictions, *see* Annot., 111 A.L.R. 79 (1937), we will not follow such an interpretation in the present case.

Statutes enacted by our legislature are to be construed to give effect to the ordinary and plain meaning of the words used. *Thompson v. State*, (1981) Ind.App., 425 N.E.2d 167, *trans. denied* (1982). Judicial construction of a statute is permissible only where the statute is ambiguous and of doubtful meaning. *Sue Yee Lee v. Lafayette Home Hospital*, (1980) Ind.App., 410 N.E.2d 1319, *trans. denied* (1981). If the intent of the statute is unmistakable and its meaning is plain and unambiguous, we will adopt the meaning plainly expressed in the statute. *Thompson v. State, supra*. In the present case, IC 25–36.5–1–17 provides, "A person who cuts or causes to be cut any timber which he has not previously purchased shall, in lieu of the normal penalties of this chapter, pay the owner of the cut or appropriated timber three (3) times the stumpage value of the timber." The language in this statute is plain. It does not require the person to have intentionally or wilfully cut timber which he or she has not previously purchased. Furthermore contrary to Wright's assertion, IC 25–36.5–1–17 is a civil penalty and not a criminal penalty. Wright's argument that IC 25–36.5–1–17 must have a *mens rea* require-

ment might have some merit if the statute were a criminal statute, see for instance, *Noble v. State*, (1967) 248 Ind. 101, 223 N.E.2d 755; however, Wright has not cited us to any cases which hold the legislature does not have the power to impose a civil penalty without the requirement of *mens rea*. Clearly, if our legislature had wanted mistake of fact to be a defense to the imposition of treble damages, it could have so provided. *See* Ind.Code 8–3–1–14 where our legislature provided for a defense of mistake of fact to a civil penalty. Rather our legislature's intention was to impose a civil penalty on those persons, particularly timber buyers, who cut timber which they had not previously purchased regardless of whether the timber was cut by mistake. The imposition of such a penalty ensures that timber buyers will exercise care in the cutting of timber and protects the landowners of Indiana from the careless felling of their timber. The imposition of the penalty is certainly not unreasonable, for if a timber buyer wants to avoid treble damages, he or she must simply take adequate steps to determine the boundaries of the land where the timber is to be cut. For instance, a timber buyer could walk the boundaries of the land with the owner, talk to neighbors about the boundaries, and check the legal description of the land at the county recorder's office.

Having found IC 25–36.5–1–17 does not provide for a defense of mistake of fact or require an intent on the part of the person who cut the timber, we find the trial court did not err in refusing Defendant's Tendered Instructions Nos. 5 and 6.

*Issue Four*

The jury returned a verdict of one thousand four hundred dollars ($1,400) for damage to Reuss's property. Wright contends this amount of damages is excessive. He states that the evidence in the record does not sustain a finding of one thousand four hundred dollars ($1,400) damage basically for two reasons. First, he cites from the

ing or being on any land not his own, or shall wilfully break the glass, or any part of it, in any building not his own, every person so trespass-

ing shall pay the party injured treble the value of the thing so damaged, broken, destroyed, or carried away, with costs."

record some of Reuss's testimony and argues that Reuss's estimate of the damage included the cost of replacing the felled trees, which Reuss could not recover since he recovered the fair market value of the timber. Second, Wright contends the only probative evidence of cost of repairs for Reuss's land was twenty-five ($25) dollars to repair the fence. We find neither of Wright's contentions to be persuasive.

A close examination of Reuss's testimony which Wright cites from the record shows Reuss was not testifying about the cost of replacing the felled trees, but was testifying about repairing the ruts on his land and removing trees which were cut by Wright but not removed. Thus, Wright's first contention has no merit.

 Contrary to Wright's second assertion, we find sufficient evidence in the record to support the jury's award. Not only did Reuss state that it would cost a few hundred dollars to repair the fence, he also stated that the total amount of damages was twenty-five thousand dollars ($25,000). Of this figure, Reuss stated twelve thousand dollars ($12,000) was the value of the trees cut. When asked about a specific amount to repair the fence, remove the felled trees and debris, and remove the ruts, Reuss replied respectively a "few hundred dollars," "I don't know," and "I have no idea on what a landscaper would cost to come out there." Record at 308–09. However, Reuss then stated that he though it would cost as much as the value of the trees cut to remove the other trees, repair the road (ruts), and repair the fence. Clearly then Reuss estimated it would cost twelve to thirteen thousand dollars ($12,000–$13,000) to repair the damage to his land. The jury award of one thousand four hundred dollars ($1,400) was within the scope of this evidence.

Wright argues Reuss's testimony lacks any probative value for establishing a monetary award. This objection was not raised in the trial court and therefore, cannot be raised on appeal. Although Wright did object to Reuss's counsel asking Reuss the total amount of damage to his land, Wright did not object when Reuss testified later that the cost of repair would be about the same as the value of the trees felled. Since Wright made no objection at trial to this testimony, it was admitted and the jury could consider it. As stated by Judge Crumpacker in *Chicago District Electric Generating Corp. v. Evans*, (1946) 117 Ind. App. 280, 288, 69 N.E.2d 627, *trans. denied* (1947):

"It is well settled in this state that: 'A party who permits incompetent evidence on a material issue to be introduced without objection cannot be heard to say on appeal that it should not be considered in determining if the finding is supported by the evidence. Its probative value, when so admitted, is for the court or jury to determine, notwithstanding such evidence might have been excluded if proper and timely objection had been made. This rule has been applied to hearsay and secondary evidence, as well as evidence rendered incompetent for other reasons.' *Klingler v. Ottinger* (1939), 216 Ind. 9, 17, 22 N.E.2d 805. See also *Suit v. Hershman* (1918), 66 Ind.App. 388, 391, 118 N.E. 310; *Riehl v. The Evansville Foundry Association* (1885), 104 Ind. 70, 3 N.E. 633; *Metropolitan Life Ins. Co. v. Lyons* (1912), 50 Ind.App. 534, 98 N.E. 824; *Wagner v. Meyer* (1913), 53 Ind. App. 223, 101 N.E. 397; *Buttz v. Warren Mach. Co.* (1914), 55 Ind.App. 347, 103 N.E. 812."

Having found the jury's verdict to be within the evidence admitted at trial, we affirm the judgment.

Judgment affirmed.

NEAL and ROBERTSON, JJ., concur.