836 A.2d 627

SOUTHERN MANAGEMENT CORPORATION,

v.

Mukhtar TAHA.

No. 136, Sept. Term, 2002.

Court of Appeals of Maryland.

Nov. 25, 2003.

**464**

Stephen M. Silvestre (Lisa F. Orenstein of Miles & Stockbridge P.C., on brief), Baltimore, for appellant.

James C. Strouse, Columbia (Forrest E. Mays, Annapolis; John W. Hermina, George W. Hermina and Hannibal G. Kemerer of Hermina Law Group, on brief), Laurel, for appellee.

Argued before BELL, C.J., ELDRIDGE *, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

BATTAGLIA, Judge.

In the case now before us, Mukhtar Taha sued Southern Management Corporation (hereinafter "SMC") and two of its employees for malicious prosecution solely under a theory of respondeat superior liability. The jury rendered a verdict in which it found that the two named employee defendants were not liable; however, the jury also found in favor of Taha against SMC, the employer corporation. We hold that such irreconcilably inconsistent jury verdicts cannot stand under the theory of respondeat superior liability.

## I. Background

### A. Facts

On May 15, 1994, SMC hired Taha to work as a Maintenance Technician at the Silver Spring Towers apartment complex, one of the apartment facilities managed by SMC. Taha, a black male, had emigrated to the United States from the Sudan in 1981. Taha's job responsibilities included plumbing, painting, lifting appliances to conduct repairs, and laying and replacing tile.

In mid-August of 1994, Taha moved a heavy barrel with the maintenance supervisor, Michael McGovern, and two other

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

SMC maintenance employees in the course of performing his regular job duties. Approximately ten days later, Debra Wylie–Forth, the property manager of the apartment complex, called a team meeting of all personnel to review their work and discuss various problems. During the course of this meeting several complaints were raised by Taha's peers concerning his work performance. Several days after the meeting, Taha reported to Wylie–Forth that while moving the heavy barrel, McGovern had intentionally let the barrel slip causing Taha to injure his back. Taha had been working without difficulty from the day of the alleged barrel incident until the time he reported the event to Wylie–Forth following the team meeting. Thereafter, he sought medical treatment and spent nearly two months on disability leave.

When Taha returned to work on October 18, 1994, Wylie–Forth assigned him the task of painting doors in the apartment complex, which he completed without incident. The next day, while continuing to paint, Taha was approached by Wylie–Forth to discuss his work performance. At that time, Taha informed Wylie–Forth that he wanted to discontinue painting and allegedly raised his voice and argued with Wylie–Forth concerning his work. Therefore, Wylie–Forth and assistant property manager, Barbara Belton, terminated Taha's employment on the basis of poor work performance, insubordination, and abusive behavior.

Shortly after Taha was terminated, McGovern and maintenance employee Wilfredo Martinez notified Wylie–Forth that several items were missing from a locked maintenance tool and supply area, including an acetylene gas tank, three padlocks, and various maintenance tools belonging to McGovern and Martinez. Martinez informed Wylie–Forth that he had witnessed Taha shaking and pulling on the lock to the maintenance area on October 4, 1994, a day that Taha was not assigned to work at Silver Spring Towers due to his disability leave. Anya Udit, a leasing consultant at Silver Spring Towers, also reported to Wylie–Forth that she spotted Taha in Wylie–Forth's locked office on October 8, 1994, while Taha

continued to be on disability leave. Thereafter, Wylie–Forth contacted the Montgomery County Police Department to report the missing items. Wylie–Forth informed the investigating officer, Robert Grims, that she did not know who had broken into the storage area, and told Officer Grims that he could talk to anyone on staff at Silver Spring Towers "because at that point in time, everyone was a suspect." The only time Wylie–Forth mentioned Taha's name was in response to Officer Grims's question asking whether any employees had been terminated recently.

While investigating the incidents, Officer Grims interviewed McGovern, Martinez, Wylie–Forth, and Udit. Based on these interviews, Officer Grims concluded that Taha was the only suspect in connection with the stolen property. On October 24, 1994, Officer Grims and Officer Bruce Evans questioned Taha about the missing property. Taha denied that he had keys to the locked storage area but admitted that he continued to have possession of keys for other areas of the building following the termination of his employment. Officer Grims also noticed seeing several large tool boxes in Taha's apartment and observed Taha's behavior during the questioning, stating that Taha "acted suspiciously and seemed nervous."

As a result of this investigation, Officer Grims obtained a warrant for Taha's arrest, which was executed on October 25, 1994. Taha was charged with burglary in the second degree, and the lesser included offense of attempted burglary, and burglary in the fourth degree for breaking and entering a dwelling or storehouse pursuant to Maryland Code, Article 27, Sections 30 and 32 (1957, 1992 Repl.Vol., 1994 Supp.). Prior to the scheduled trial, Taha produced alibi evidence that placed him out of town during the dates in question. Thereafter, the State entered a *nolle prosequi* to the charges.

### B. Procedural History

On March 3, 1999, Taha filed in the Circuit Court for Montgomery County a civil complaint against SMC, and two of

its employees, McGovern and Wylie–Forth.[1] The complaint asserted, *inter alia,* a claim of malicious prosecution,[2] stating that SMC and its agents "falsely and maliciously filed a complaint with the Montgomery County Police Department swearing that Mukhtar Taha had committed burglary in the offices of SMC on two separate occasions" for which SMC and its agents lacked probable cause or reasonable suspicion. Taha did not name any other defendants or agents of SMC in his complaint for malicious prosecution. On July 16, 1999, SMC filed a motion for summary judgment on Taha's claims of malicious prosecution and intentional infliction of emotional distress, which the trial court denied. A jury trial was held on November 17 and 18, 1999. At the beginning of the trial, SMC submitted proposed jury instructions, set forth in *Maryland Civil Pattern Jury Instructions* (3d ed.1999), to the court.[3]

---

1. Taha originally filed a complaint against SMC, Wylie–Forth, and McGovern in the United States District Court for the District of Maryland, raising a claim for a violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, and a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, in addition to common law tort claims. On December 27, 1996, the federal court ruled favorably upon the defendants' Motion to Dismiss Taha's claim under the ADA. The federal court found that Taha did not meet the statutory requirements of the ADA because he failed to allege that he had experienced discrimination on the basis of a physical disability in his initial complaint filed with the Montgomery County Government Human Relations Commission. On February 4, 1999, the federal court granted defendants' Motion for Judgment on the Pleadings on Taha's Title VII claim. Once Taha's federal claims were dismissed, the federal court declined to exercise its supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) to hear Taha's remaining state tort law claims. Therefore, the federal district court dismissed Taha's complaint without prejudice.

2. Taha's complaint also contained allegations of wrongful discharge, conspiracy, false imprisonment, defamation, and intentional infliction of emotional distress. Upon a motion filed by the defendants, the circuit court dismissed with prejudice all of Taha's claims except for the intentional infliction of emotional distress and malicious prosecution claims prior to trial. At the close of Taha's presentation of evidence at trial, the circuit court entered judgment in favor of SMC on the intentional infliction of emotional distress claim. Thus, the jury only considered Taha's claim for malicious prosecution.

3. The record does not contain any proposed jury instructions from Taha.

At trial, Officer Grims testified that based upon his investigation, he believed he had probable cause to arrest Taha for the burglary and attempted burglary at Silver Spring Towers. When questioned about the process for bringing charges against Taha, Officer Grims stated as follows:

Respondent: Who made the decision to file the application for statement of charges against Mr. Taha?

Grims: It was my decision.

Respondent: What if any role did Mr. McGovern, Michael McGovern, play in making that decision?

Grims: You said Mr. McGovern?

Respondent: Yes, Mr. Michael McGovern.

Grims: No role.

Respondent: What if any role did Ms. Debbie Wylie–Forth play in making your decision to file the application for statement of charges?

Grims: She was the original complainant for the police investigation, however, it was my decision to file the charges.

Respondent: At any point in time, what if anything did Ms. Debbie Wylie–Forth say to you to encourage you or pressure you into filing charges for Mr. Taha?

Grims: None that I recall.

Respondent: What if anything did Mr. McGovern say to you to pressure you or get you to file an application of statement of charges against Mr. Taha?

Grims: Nothing.

At trial, Taha asserted that Wylie–Forth had an unfavorable bias against him and his work and alleged that McGovern, a white, hearing-impaired individual, made racially disparaging comments towards Taha, in an effort to establish malice on the part of Wylie–Forth and McGovern. Taha did not present evidence at trial to show that other SMC agents or employees, other than Wylie–Forth and McGovern, could be liable for malicious prosecution.

At the close of Taha's case, and, again, at the conclusion of all testimony, SMC made a motion for judgment pursuant to Maryland Rule 2–519. At the end of the case, the trial court granted SMC's motion for judgment on Taha's claim for intentional infliction of emotional distress, but denied the motion as to the malicious prosecution claim. Then, the trial court gave the following instructions to the jury:

[A]ll the elements of malicious prosecution must be established beyond a reasonable doubt in order for the plaintiff to prevail. Malicious prosecution is the beginning or continuing of a criminal proceeding with malice and without probable cause against another where the proceeding terminates in favor of the other person.

A person is responsible for starting a criminal proceeding who ... directs or requests a prosecution based on information which the person knows is false or withholds information which a reasonable person would realize might affect the decision to prosecute, ... or gives inaccurate or incomplete information to those who prosecute.

With respect to probable cause, the defendant acted without probable cause if the defendant did not have any reasonable grounds to believe in the plaintiff's guilt. Mere belief, however sincere, is not sufficient. There must be such grounds for belief founded upon actual knowledge of acts as would influence the mind of a reasonable person.

Well, the plaintiff in this matter was initially charged with the offenses contained in the charging document. The action by the charging authority is to be considered along with the other evidence on the question of whether the defendant has reasonable grounds to believe in the plaintiff's guilt or involvement.

You are not bound by this in determining this action of the prosecuting authority in determining whether the defendant had reasonable grounds to believe in the plaintiff's guilt. Also, there must be a demonstration or proof by a preponderance of the evidence that the defendant or defendants acted with malice, and a person acts with malice if the

person's primary purpose in starting a prosecution is other than bringing an offender to justice. If a prosecution was started without probable cause, you may infer the existence of malice. . . .

After holding a bench conference, the court gave the following supplemental instruction on respondeat superior liability:

In this matter, the defendants are sued as employer and employee, so the management may be employer and co-defendant, and the employees, being Mr. McGovern and Ms. Wylie, for them.

If the employee or employees are responsible for the acts about which the complaint is made by the plaintiff, the employer is also responsible since they would have been acting in the course of their employee responsibilities.

Neither party objected to the trial court's instruction or requested further clarification concerning respondeat superior liability.

After the jury left to begin its deliberations, counsel for SMC requested that the question concerning liability be posed separately with regard to each named defendant on the special verdict sheet. The trial court approved the request, and counsel for Taha did not object to the form of the questions posed on the special verdict sheet. The verdict sheet presented to the jury asked the following questions concerning liability:

1. Was the plaintiff, Mukhtar Taha, the victim of malicious prosecution by the defendant Southern Management Corporation?

2. Was the plaintiff, Mukhtar Taha, the victim of malicious prosecution by the defendant, Debra Wylie–Forth?

3. Was the plaintiff, Mukhtar Taha, the victim of malicious prosecution by the defendant, Michael McGovern?

The jury returned a verdict in favor of defendants Wylie–Forth and McGovern, finding that Taha had not been the victim of malicious prosecution by either employee, but found against SMC. The jury awarded Taha $25,000 in economic

damages and $75,000 in non-economic damages. The Circuit Court then put the issue of punitive damages before the jury and instructed them as follows:

> [T]here is an additional consideration that you must make, but are not required to. It is fundamental that you make a determination with respect to liability; that is, compensatory damages, but you may make an award for punitive damages if you deem it appropriate.
>
> An award for punitive damages, if you decide to award punitive damages, must be established by clear and convincing evidence, and I am going to define what clear and convincing is.
>
> To be clear and convincing, evidence should be clear in the sense that it is certain, plain to the understanding and unambiguous and convincing in the sense that it [is] so reasonable and persuasive as to cause you to believe it. But you need not be convinced beyond a reasonable doubt; only to clear and convincing evidence.
>
> An award of punitive damages, I indicated, must be established by clear and convincing evidence, and for an award of punitive damages to be made, you should consider the following three factors: in an amount that will deter the defendant and others from similar conduct in the future; two, proportionate to the wrongfulness of the defendant's conduct and the defendant's ability to pay; and three, but not designed to bankrupt or financially destroy a defendant.
>
> As I indicated earlier, you may, if you deem it appropriate, award for punitive damages, but you are not required to do so.

SMC then offered two exceptions to these instructions. SMC argued that the judge should have instructed the jury that "there needs to be actual malice" for an award of punitive damages.. The judge responded that instructions as to actual malice were unnecessary because, by virtue of the jury finding malicious prosecution, it had determined already that malice existed. SMC also complained, unsuccessfully, that the judge failed to instruct the jury that it could award only nominal

damages. The jury was sent to deliberate and, upon returning, awarded Taha $100,000 in punitive damages.

SMC filed a motion for judgment notwithstanding the verdict, a motion for remittitur, and a motion to strike the punitive damages award. On February 10, 2000, the trial court held a hearing on SMC's post-trial motions. The court denied SMC's motion for judgment notwithstanding the verdict, stating:

Well, with respect to the verdict, without getting into any extensive recitation and review of the facts of this case, because what was before the jury is essentially uncontested, but with respect to the J.N.O.V., the Court finds that the verdict was not contrary to the evidence, and it was supported by the evidence. The finder of fact has a rather wide latitude.

And I appreciate [SMC's] argument about vicarious liability. I think that the evidence before the jury was one of whether or not they were acting in the course of their employment, and [if] that was a factual issue that had to be decided by the jury, their argument would be a stronger one.

But that was essentially conceded, and I think the jury might well determine that the responsibility was through the agents. Even though not finding the individual employees responsible, which clearly they did by their verdict, that does not mean that the verdict was legally defective, although it may appear on the surface to be factually inconsistent.

So for that reason I am not going to disturb the verdict. I do believe that the J.N.O.V. should be denied.

SMC filed a timely appeal of the trial court's judgment to the Court of Special Appeals.[4] The Court of Special Appeals held that the verdict against SMC could not stand based on the jury's exoneration of the two named defendant employees whose conduct served as the basis for SMC's liability. *South-*

---

4. Taha did not file a cross-appeal against the judgments in favor of Wylie–Forth and McGovern.

*ern Management Corporation v. Taha,* 137 Md.App. 697, 724, 769 A.2d 962, 978 (2001). The court reasoned that the trial court's supplemental instruction to the jury on the doctrine of respondeat superior "was accurate but arguably incomplete and, as a result, possibly misleading." *Id.* at 718, 769 A.2d at 974. Although the court intimated that the inconsistent verdicts in this case could have been avoided by a more carefully worded verdict sheet, it concluded that Taha waived his ability to complain about the sufficiency of the verdict sheet by failing to object to the form of the questions posed. *Id.* at 718–19, 769 A.2d at 974. The Court of Special Appeals further reasoned that a retrial of the matter would not be appropriate with regard to SMC's liability because the principles of *res judicata* and collateral estoppel would serve to bar Taha from basing SMC's liability on the conduct of either Wylie–Forth or McGovern in a subsequent trial, leaving Taha without a basis under respondeat superior for a malicious prosecution claim against SMC. *Id.* at 731–32, 769 A.2d at 982.

This Court granted Taha's petition for a writ of certiorari, *Taha v. Southern Management Corp.,* 365 Md. 266, 778 A.2d 382 (2001). Holding that there had existed no authority for the Court of Special Appeals to have entertained the appeal because "final and appealable judgments [had] not been entered in this matter," we vacated the judgment of the intermediate appellate court and remanded the case. *Taha v. Southern Management Corp.,* 367 Md. 564, 571, 790 A.2d 11, 15 (2002). We determined that the judgments were not final because "we ha[d] no docket entries and no separate documents for the employee verdicts" as required by Maryland Rule 2–601. *Id.* at 570, 790 A.2d at 15.

On remand, the Court of Special Appeals vacated its reversal of judgment against SMC and dismissed Taha's appeal. Following this order, the case again reached the Circuit Court, awaiting entry of judgment pursuant to Maryland Rule 2–601. Upon SMC's motion, the Circuit Court ordered that the clerk enter judgments as to all defendants in the case. The order stated:

Judgment by Verdict entered and recorded in judgment index in favor of Defendants Debra Wylie–Forth and Michael McGovern and against Plaintiff Mukhtar Taha and in favor of Plaintiff Mukhtar Taha against Defendant Southern Management Corporation in the amount of Twenty–Five Thousand Dollars ($25,000.00) for economic damages and the amount of Seventy–Five Thousand Dollars ($75,000.00) for non-economic damages and in the amount of One Hundred Thousand Dollars ($100,000.00) for punitive damages.

SMC then filed its previously-filed Motions for Judgment Notwithstanding the Verdict and, in the alternative, for Remittitur and to Strike the Punitive Damage Award. The Circuit Court denied those motions, and SMC appealed. This Court, on its own motion and before any further proceedings in the Court of Special Appeals, issued a writ of certiorari. *Southern Management Corp. v. Taha*, 374 Md. 81, 821 A.2d 369 (2003). SMC now presents the following issues for our review:

1. Whether the Circuit Court erred in denying SMC's Motion for Judgment Notwithstanding the Verdict for malicious prosecution because the jury found that its agents did not commit that tort.

2. Whether the Circuit Court erred in refusing to instruct the jury that actual malice is necessary for an award of punitive damages.

3. Whether the Circuit Court erred in denying SMC's Motion to Strike Punitive Damages because there was no evidence of actual malice in the record to support the award.

4. Whether the Circuit Court erred in denying SMC's Motion for Remittitur of the jury's award of $25,000 for economic damages because there was only evidence of $500 in such damages.

We conclude that the Circuit Court erred in denying SMC's post-judgment motion to set aside the jury's verdicts as to SMC and its employees because they were irreconcilably

inconsistent. Our resolution of this matter, consequently, disposes of our need to answer questions 2, 3, and 4.[5]

## II. Discussion

We must consider whether SMC could be held liable for the tort of malicious prosecution under the doctrine of respondeat superior when the jury exonerated the very employees alleged to have acted maliciously in prosecuting the petitioner. Prior to the commencement of the trial, both Taha and SMC submitted proposed jury instructions to the court. The trial court instructed the jury on the theory of liability under the doctrine of respondeat superior stating, "[i]f the employee or employees are responsible for the acts about which the complaint is made by the plaintiff, the employer is also responsible since they would have been acting in the course of their employee responsibilities." The instructions also limited the universe of responsible SMC employees to co-defendants, Wylie–Forth and McGovern. Neither party objected to the instructions given by the court, so the jury was to base its decision *only* on the conduct of Wylie–Forth and McGovern, who, the parties conceded, were the agents of SMC.

Taha argues that the verdict form was "consistent and was agreed to and insisted by Southern," such that SMC is es-

---

5. Although, for the purpose of this opinion, addressing question 2 is unnecessary, its answer is so obvious and the law is so clear that it makes little sense for us to pass it over completely. In a malicious prosecution case, "[a]lthough an inference of malice based on a lack of probable cause is sufficient to support an award of compensatory damages, in order to receive a punitive damage award [a plaintiff] must prove at trial that [the defendant was] moved by actual malice. This showing may not be made inferentially." *Okwa v. Harper,* 360 Md. 161, 189, 757 A.2d 118, 133 (2000). For an award of punitive damages, it is not enough for a plaintiff to prove that a defendant acted negligently in seeking prosecution without probable cause. *Id.* Rather, a plaintiff "must establish by clear and convincing evidence the defendant's wrongful or improper motive for instigating the prosecution." *Montgomery Ward v. Wilson,* 339 Md. 701, 735–36, 664 A.2d 916, 933 (1995). The Circuit Court in this case, however, failed to instruct the jury that actual malice or, in other words, a "wrongful or improper motive" was required for an award of punitive damages. Consequently, the court's instruction on punitive damages was issued in error.

topped on appeal from complaining that the verdict was inconsistent. Taha's arguments, however, are misdirected because SMC has not lodged any complaint regarding the adequacy of the respondeat superior jury instructions or the text of the verdict sheet itself. SMC asserts that the verdict rendered *by the jury* was irreconcilably inconsistent. Upon examining the trial court's instructions to the jury and the text of the special verdict form, we conclude that the jury was charged appropriately on the claim of malicious prosecution under a respondeat superior theory of liability. Similarly, the jury clearly stated through its verdict that it did not find Wylie–Forth and McGovern liable for the tort of malicious prosecution while holding the corporate employer SMC responsible. Therefore, the jury rendered a verdict which is irreconcilably inconsistent under the doctrine of respondent superior. An irreconcilably inconsistent verdict exonerating named individual employee-agent defendants while purporting to inculpate the corporate defendant cannot stand.

To understand the effect of the jury's verdict, we must explore the underlying cause of action for malicious prosecution and theory of liability advanced by Taha against SMC. To establish a prima facie case of malicious prosecution, a plaintiff must show that 1) the defendant(s) instituted a criminal proceeding against the plaintiff; 2) the criminal proceeding was resolved in favor of the plaintiff; 3) the defendant(s) instituted the criminal proceeding without probable cause; and 4) the defendant(s) acted with malice or for the primary purpose other than bringing the plaintiff to justice. *See Okwa v. Harper*, 360 Md. 161, 183, 757 A.2d 118, 130 (2000); *Exxon Corp. v. Kelly*, 281 Md. 689, 693, 381 A.2d 1146, 1149 (1978).

A plaintiff may bring an action for malicious prosecution against a corporate entity, *see Carter v. Howe Machine Co.*, 51 Md. 290, 293–94 (1879); however, we have long held that a corporation can act only by virtue of its agents. *See Hecht v. Resolution Trust Co.*, 333 Md. 324, 345, 635 A.2d 394, 405 (1994); *Maryland Trust Co. v. Mechanics Bank*, 102 Md. 608, 629, 63 A. 70, 78 (1906); *Central Railway Co. v. Brewer,*

78 Md. 394, 401, 28 A. 615, 616 (1894); *Carter*, 51 Md. at 295–96 (1879). Corporations have been described as "creature[s] of legal fiction," which are "incapable of tortious conduct" by themselves. *Lokay v. Lehigh Valley Cooperative Farmers*, 342 Pa.Super. 89, 492 A.2d 405, 408, 409 (1985). Because, by themselves, corporations are "dejure persons" and "cannot . . . have a mental state of any kind," they "can only . . . be liable for . . . the mental states of [their] various employees, when they act within the authority given to them." *Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 642 F.Supp. 781, 803 (E.D.La.1986).

In *Central Railway Co. v. Brewer, supra*, we set forth the following explanation of corporate liability in the context of a claim for malicious prosecution:

The liability of corporations aggregate for torts committed by them through their agents has, in recent years, received a good deal of attention from the Courts. It may indeed be said that the question of corporate liability for torts has been in a progressive stage; but step by step, have the limits of such liability been enlarged and extended, until now, there is but little difference between corporate liability and individual liability with respect to torts.

In consequence however of the fact that a corporation must of necessity act through its agents, Courts have almost invariably held that to hold a corporation liable for a tortious act committed by its agent, the act must be done by its express precedent authority, or ratified and adopted by the corporation. Nor is a corporation responsible for unauthorized and unlawful acts, even of its officers, though done *colore officii*. To fix the liability, it must either appear that the officers were expressly authorized to do the act, or that it was done *bona fide*, in pursuance of a general authority, in relation to the subject of it, or that the act was adopted or ratified by the corporation.

78 Md. at 401, 28 A. at 616.

Litigants may invoke the doctrine of respondeat superior as a means of holding an employer, corporate or

otherwise, vicariously liable for the tortious conduct of an employee, where it has been shown that the employee was acting within the scope of the employment relationship at that time. *See Oaks v. Connors,* 339 Md. 24, 30, 660 A.2d 423, 426 (1995); *Brady v. The Ralph Parsons Co.,* 308 Md. 486, 511, 520 A.2d 717, 730–31 (1987); *Cox v. Prince George's County,* 296 Md. 162, 170, 460 A.2d 1038, 1042 (1983). On a successful claim under the doctrine of respondeat superior, an employer will be held jointly and severally liable for the tortious acts committed by its employee. *See DiPino v. Davis,* 354 Md. 18, 47, 729 A.2d 354, 370 (1999); *Baltimore Police Dep't v. Cherkes,* 140 Md.App. 282, 332, 780 A.2d 410, 439 (2001). For an employee's tortious acts to be considered within the scope of employment, the acts must have been in furtherance of the employer's business and authorized by the employer. *See Sawyer v. Humphries,* 322 Md. 247, 255, 587 A.2d 467, 470 (1991). As we explained in *Ennis v. Crenca,* 322 Md. 285, 587 A.2d 485 (1991):

> By "authorized" [it] is not meant authority expressly conferred [by the employer], but whether the act was such as was incident to the performance of the duties entrusted to the employee by the employer.

322 Md. at 293–94, 587 A.2d at 489 (quoting *Sawyer,* 322 Md. at 254–55, 587 A.2d at 470)(internal quotations omitted).

As a corporation without the capacity to exercise judgment, SMC cannot be held liable for the tort of malicious prosecution under the doctrine of respondeat superior without evidentiary proof that one of its employees, acting within the scope of that person's employment duties, engaged in conduct sufficient to form a prima facie case of malicious prosecution.[6]

---

6. Whether an individual is an employee and whether that individual's conduct falls within the scope of employment is normally a question for the jury. *See Sawyer,* 322 Md. at 260–61, 587 A.2d at 473. For conduct to be considered within the scope of employment, the conduct must be of the same general nature as the type of conduct authorized by the principal in the performance of the employment duties. Here, the parties conceded that Wylie–Forth and McGovern were employees of SMC.

*See DiPino*, 354 Md. at 48, 729 A.2d at 370 (stating that, where liability is derivative, "recovery may not be had against the entity if the employee is found not to be liable or is released").

Taha based his theory of recovery against SMC for the tort of malicious prosecution solely on application of the doctrine of respondeat superior to the conduct of employees Wylie–Forth and McGovern. Taha could have pursued his claim of malicious prosecution against the corporate defendant, SMC, alone, and established the corporate entity's liability through evidence concerning the conduct of one or more of SMC's employees. Taha, however, elected to pursue a more narrow theory of recovery based on evidence presented to the jury regarding the conduct of Wylie–Forth and McGovern.

█ Taha contends that he named Wylie–Forth and McGovern as individual defendants so that he could recover against them personally based on the egregious and outrageous nature of their conduct. Such an assertion, however, undermines the respondeat superior theory of recovery, for when an agent's conduct is deemed to be " 'quite outrageous' " or " 'highly unusual,' " it is usually indicative of the fact that the conduct falls outside the scope of the agent's employment. *See Sawyer*, 322 Md. at 257, 587 A.2d at 471–72 (quoting Prosser and Keeton on the Law of Torts, § 70 at 506 (5th ed.1984)). Conduct of Wylie–Forth and McGovern falling outside the scope of their employment cannot form the basis for a claim of malicious prosecution under a theory of respondeat superior liability.

The jury instructions and the special verdict sheet further undercut Taha's claim that the individual defendants were sued personally for their egregious and outrageous conduct. The trial judge offered the following supplemental instructions, to which Taha did not object:

In this matter, *the defendants are sued as employer and employee,* so the management may be employer and co-defendant, and the employees, being Mr. McGovern and Ms. Wylie–Forth, for them.

If the employee or employees are responsible for the acts about which the complaint is made by the plaintiff, the employer is also responsible *since they would have been acting in the course of their employee responsibilities.*

With these instructions, the jury was directed to consider the behavior of each defendant in his/her capacity as an employee. The jury did not have the task of determining whether the employees' conduct was outrageous or fell outside of the their duties as agents of SMC. The special verdict sheet also did not ask the jury to distinguish whether McGovern or Wylie–Forth acted outrageously or outside their employment duties. Rather, the questions as to each individual defendant simply asked whether the plaintiff had been "the victim of malicious prosecution."

Taha maintains, however, that its case against McGovern, Wylie–Forth, and SMC should be likened to a criminal prosecution against one accused of murder and the lesser-included offense of assault. He contends, basically, that proving SMC's "corporate liability" is a lesser-included form of the McGovern's and Wylie–Forth's "personal liability," like assault is a lesser-included offense of murder. Because the failure to prove murder does not necessarily preclude the jury from finding assault, Taha claims that the jury could find "corporate liability" of SMC even if it did not find "personal liability" of McGovern and Wylie–Forth. Taha's attempt to apply a criminal law theory to this civil tort claim misses the mark.

The term "lesser-included offenses" refers to a criminal law doctrine that has been applied where a defendant has been charged with numerous crimes that share some elements. In such a situation, the jury may "consider the possibility of conviction for an offense consisting of the same, but fewer elements of the crime for which the defendant was brought to trial." *State v. Bowers,* 349 Md. 710, 717, 709 A.2d 1255, 1258 (1998) (quoting Janis L. Ettinger, *In Search of a Reasoned Approach to the Lesser Included Offense,* 50 BROOK. L.REV. 191, 195 (1984)). The defendant may be convicted of

the crime containing the fewer elements—the lesser-included offense—even though the jury found that defendant not guilty of the greater offense. *See Bowers,* 349 Md. at 717, 709 A.2d at 1258.

 The tort of malicious prosecution, however, is not gradable; it is comprised of certain established elements, and there are no less serious or more serious varieties of it. The jury determined that Taha failed to prove that McGovern's or Wylie–Forth's conduct, either in their individual or employment capacity, amounted to malicious prosecution. The jury considered this same conduct of Wylie–Forth and McGovern and, applying the established elements of malicious prosecution, determined that SMC, their employer, was liable for malicious prosecution. SMC's liability, however, did not require the establishment of fewer elements nor some "lesser" conduct on the part of its employees. Therefore, because a corporation cannot be held liable but through the acts of its agents, we cannot reconcile the verdicts exonerating McGovern and Wylie–Forth with the verdict finding SMC liable for malicious prosecution.

Taha asserts that in presenting his case against Wylie–Forth, McGovern, and SMC, he was able to establish a prima facie case of malicious prosecution against SMC based on the conduct of unnamed SMC employees. To the contrary, the record, including testimony, jury instructions, and verdict forms contain scant reference to the actions of SMC employees other than Wylie–Forth and McGovern. As relevant to Taha's claim of malicious prosecution, the jury heard evidence that Martinez, an SMC employee, told McGovern and Officer Grims that Taha had been observed pulling on the lock to the maintenance area on a day when Taha was not on duty. The jury also heard that Udit, another SMC employee, told officer Grims that she saw Taha briefly enter Wylie–Forth's office on a day that he was not working. These morsels of evidence regarding the conduct of other SMC employees hardly provide the jury with sufficient evidence to determine that, based on

that conduct, SMC maliciously prosecuted Taha.[7]

Rather, the gravamen of the case was limited to the two named employees. In establishing his case of malicious prosecution against SMC, Taha did not ask the jury to consider whether SMC employees other than Wylie–Forth and McGovern who were interviewed by Officer Grims were agents of SMC, and whether they, in fact, were acting within the scope of their employment when giving those interviews to the police. Providing information to the police about the conduct of a co-worker during a police interview, particularly when the interview was not conducted at the behest of the employer, may or may not be considered as being within the scope of employment. *See Cox*, 296 Md. at 171, 460 A.2d at 1042 (considering whether the employee's conduct was foreseeable). In this case, the employees who were interviewed by Officer Grims were not required as a condition or responsibility of employment at SMC to answer any questions from police. We have repeatedly stressed, "where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or *where the employee is acting to protect his own interests,* even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment." *Sawyer*, 322 Md. at 257, 587 A.2d at 471 (emphasis added); *see LePore v. Gulf Oil Corp.*, 237 Md. 591, 596–98, 207 A.2d 451, 453–54 (1965); *Carroll v. Hillendale Golf Club*, 156 Md. 542,

---

7. The dissent relies heavily on the distinction between "special verdicts" and "general verdicts" to argue that the inconsistent verdicts in this case should not be stricken. Although we have no quarrel with the dissent's characterization of those types of verdicts, we find the distinction irrelevant to the resolution of this case. Where the plaintiff has proven that non-party employees of a corporation acted to commit a tort in the scope of their employment, we agree that a finding of corporate liability is permitted even though other employees who were named as defendants have been exonerated. This type of split verdict is not irreconcilably inconsistent because the actions of the named defendants do not form the sole basis for the plaintiff's claim against the corporation. Here, as we have stated, the evidence does not support a jury finding that the corporation was liable based on conduct of non-party employees.

545–46, 144 A. 693, 695 (1929). Thus, even if the jury had been asked to consider the conduct of employees other than Wylie–Forth and McGovern, reasonable minds could conclude that the non-defendant SMC employees who were interviewed as suspects for the thefts at Silver Spring Towers acted to protect their own personal interests. *See Southern Management Corp. v. Taha,* 137 Md.App. at 730–31, 769 A.2d at 981; *Rusnack v. Giant Food, Inc.,* 26 Md.App. 250, 261–62, 337 A.2d 445, 452 (1975).

■■■ We hold that a principal corporation cannot be held liable under the doctrine of respondeat superior when the jury has exonerated the co-defendant employees whose conduct was alleged to be the sole basis of the claim for liability. *See DiPino,* 354 Md. at 48, 729 A.2d at 370; *see also Burnett v. Griffith,* 739 S.W.2d 712, 715 (Mo.1987)(relying on *McGinnis v. Chicago, R.I. & P. Ry. Co.,* 200 Mo. 347, 98 S.W. 590 (1906)); *Montgomery Ward & Co., Inc. v. Hoey,* 486 So.2d 1368, 1369 (Fla.Dist.Ct.App.1986)(holding that the award of punitive damages against a corporation could not stand because a jury made a specific finding that an employee was not subject to punitive damages). *A fortiori,* the verdicts rendered in this case are irreconcilably inconsistent.

■■■ In criminal matters, inconsistent jury verdicts may be permitted to stand. *Dunn v. United States,* 284 U.S. 390, 393–94, 52 S.Ct. 189, 190–91, 76 L.Ed. 356 (1932). Justice Holmes, writing for the Supreme Court in *Dunn* stated:

Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. . . . That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.

*Id.* In the years following the Supreme Court's decision in *Dunn,* we have applied this principal to our decisions in criminal cases. *See Mack v. State,* 300 Md. 583, 594–95, 479 A.2d 1344, 1349 (1984); *Ford v. State,* 274 Md. 546, 553, 337 A.2d 81, 86 (1975)("[I]t is clear that the mere assertion,

without proof of actual irregularity, that the petitioner's conviction should be reversed because the jury's verdicts, pertaining to this multicount indictment, of guilty on one count and not guilty on the other counts, were inconsistent, cannot be embraced by this Court as sufficient reason to vitiate Ford's conviction.").

We recognize that treatment of irreconcilably inconsistent jury verdicts in the civil context may be different from our decisions about inconsistent jury verdicts in criminal trials wherein we have permitted inconsistent jury verdicts to stand. *See Shell v. State*, 307 Md. 46, 54, 512 A.2d 358, 362 (1986)(permitting an inconsistent jury verdict to stand in a criminal case based on the "singular role of the jury in the criminal justice system"); *State v. Moulden*, 292 Md. 666, 682, 441 A.2d 699, 707 (1982)("Inconsistent jury verdicts, although perhaps illogical, do occur and are valid."); *Ford*, 274 Md. at 553, 337 A.2d at 86. As we explained in *Shell*,

> The general view is that inconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity, and that continual correction of such matters would undermine the historic role of the jury as the arbiter of questions put to it.

*Id.*

In keeping with the rationale set forth in the Supreme Court's decision in *Dunn* and with our decisions in criminal matters involving inconsistent jury verdicts, the Court of Special Appeals has reasoned that absent proof of actual irregularity, an inconsistent jury verdict in a criminal case is generally not a sufficient basis for an appellate court to reverse the jury's verdict. *See Steffey v. State*, 82 Md.App. 647, 662, 573 A.2d 70, 77 (1990). The jury interplay involved in rendering a civil verdict involves the same potential for jury compromises in order to reach unanimity and mistakes as the process in criminal jury verdicts. *See Davis v. Goodman*, 117 Md.App. 378, 423, 700 A.2d 798, 820 (1997).

Nevertheless, there remains a distinction between inconsistent verdicts in criminal cases [8] and *irreconcilably inconsistent jury verdicts* in civil matters. While a member of the Court of Special Appeals, Chief Judge Bell considered the effect of irreconcilably inconsistent verdicts in a civil fraud case, holding that they cannot stand:

It is well settled that irreconcilably defective verdicts cannot stand. *Gaither v. Wilmer*, 71 Md. 361, 364, 18 A. 590 (1889). Where the answer to one of the questions in a special verdict form would require a verdict in favor of the plaintiff and an answer to another would require a verdict in favor of the defendant, the verdict is irreconcilably defective. *Ladnier v. Murray*, 769 F.2d 195, 198 (4th Cir.1985); *Carter v. Rogers*, 805 F.2d 1153, 1158–59 (4th Cir.1986); *Robertson Oil Co., Inc. v. Phillips Petroleum Company*, 871 F.2d 1368, 1373 (8th Cir.1989); *Hopkins v. Coen*, 431 F.2d 1055, 1059 (6th Cir.1970); *Lewis v. Yaggi*, 584 S.W.2d 487, 497–98; *Russell v. Pryor*, 264 Ark. 45, 568 S.W.2d 918, 922–23 (1978).

*S & R, Inc. v. Nails*, 85 Md.App. 570, 590, 584 A.2d 722, 731 (1991), *rev'd on other grounds*, 334 Md. 398, 639 A.2d 660 (1994)(involving an irreconcilably inconsistent verdict awarding punitive damages on a fraud claim where the jury had determined that the defendant had acted only with implied rather than actual malice). The verdict rendered by the jury in the case *sub judice* is irreconcilably inconsistent and, therefore, cannot be permitted to stand.

We note that various of our sister jurisdictions agree that verdicts that exonerate an employee for a tort while holding the employer responsible based on the doctrine of respondeat superior cannot stand. *See Stevenson v. Precision Std., Inc.*, 762 So.2d 820, 827 (Ala.1999)("A jury verdict for an agent as defendant cannot be reconciled with a verdict against the agent's principal if the only claim against the principal is

---

8. We leave for another day the issue of whether this Court should reconsider its decision in criminal matters in which inconsistent verdicts have been rendered.

based on the underlying negligence of the agent.")(quoting *Owens v. Lucas,* 604 So.2d 389, 391 (Ala.1992)); *Young v. Cerniak,* 126 Ill.App.3d 952, 81 Ill.Dec. 923, 467 N.E.2d 1045, 1054 (1984)(stating that the jury "should have been instructed that if it found one of the individual defendants liable, it was required to find [the corporation] liable; but if it found all of the individual defendants not liable, it was required to find [the corporation] not liable," where plaintiff sought to hold defendant corporation liable solely through a theory of respondeat superior liability); *Estes v. Hancock County Bank,* 259 Ind. 542, 289 N.E.2d 728, 730 (1972)(holding that, in a malicious prosecution case, "a proper verdict in favor of the employee, whether announced by the jury or determined by the trial court . . . requires judgment in favor of the employer where the liability of the employer is grounded *solely* upon the activities of the employee"); *Burnett v. Griffith,* 739 S.W.2d 712, 715 (Mo.1987)(en banc)("For over 80 years Missouri courts have held that when a claim is based on respondeat superior, exoneration of an employee operates to exonerate the employer."); *Perry v. Costa,* 97 A.D.2d 655, 469 N.Y.S.2d 193, 194–95 (1983)("It is clear that where the only possible theory of liability against a corporate defendant . . . is that of vicarious liability for the acts of its employee, verdicts of no cause of action against the employee and in favor of plaintiff against the corporate defendant are inconsistent and absurd.") (internal quotations omitted); *DeFeliciano v. De Jesus,* 873 F.2d 447, 450 (1st Cir.) (finding that the only legally adequate basis for the employer company's liability on political discrimination claim was eliminated by the jury's verdict in favor of the employee who terminated the plaintiff) *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989). Ergo, the jury's verdict in favor of Taha against SMC cannot be permitted to stand. Even assuming the truth of all of the evidence presented by Taha and any inferences which may be drawn from it, we conclude that the only logical and legally sound conclusion is that SMC could not be held liable for malicious prosecution in light of the jury's verdict in favor of Wylie–Forth and McGovern.

██ The dissent asserts that SMC lost its opportunity to argue the impact of inconsistent verdicts in a civil case because it neither objected to the jury instructions nor to the verdict before the jury was dismissed. In support of its opinion, the dissent cites numerous federal cases interpreting the requirements of Federal Rule of Civil Procedure 49(b), which instructs a federal trial judge about the options available when a jury returns a general verdict that is inconsistent with the jury's answers to special interrogatories. According to the cases cited by the dissent, a party's failure to object at trial to the verdict's inconsistencies results in a waiver of that objection. These cases interpreting the federal rule are inapposite to the instant case, however, for at least two reasons: first, they involve a type of verdict inconsistency that does not exist in the case before us; second, they interpret a rule that has no equivalent in the Maryland Rules.

As the dissent points out, the case before us involves multiple general verdicts rather than a general verdict accompanied by answers to special interrogatories, a jury's specific fact-findings. FRCP 49(b), however, dictates a federal trial judge's options only when a jury has answered special interrogatories and reached a general verdict:

> When the answers [to interrogatories] are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

Here, we face neither of the inconsistencies described by the federal rule.[9]

---

**9.** Not all courts construing FRCP 49(b) require a party to object to the inconsistent verdict prior to the discharge of the jury. *See Los Angeles*

In a case remarkably similar to the present case, *DeFeliciano v. DeJesus*, 873 F.2d 447 (1st Cir.1989), in which a jury returned inconsistent general verdicts, the United States Court of Appeals for the First Circuit ordered judgment on the basis of the record despite the absence of an objection to the inconsistency at trial. In *DeFeliciano*, the plaintiff sued his employer corporation and the corporation's president for wrongful termination. Reaching separate legal conclusions, the jury returned verdicts in favor of the president but against the corporation. *Id.* at 449. Neither the defendants nor the plaintiff sought to resubmit the issues to the jury before it was discharged, and the trial judge accepted the verdicts. *Id.* at 451. On appeal, the employer argued that the judgment against it could not stand in light of its president's exoneration. *Id.* at 450.

The court entertained the employer's argument. Although the court acknowledged its general rule that verdict inconsistencies should be brought to the trial court's attention before the jury is discharged, it stated that where "[n]either side sought resubmission of the case to the jury" or sought a new trial, it seemed "procedurally fair" to resolve the inconsistency at the appellate level. *Id.* at 451–52. The court also noted that a new trial was not appropriate because the employee opted not to appeal the judgment in favor of the president. *Id.* at 452.

This case is similar to *DeFeliciano* in that SMC and Taha *both* did not request the trial judge to resubmit the issues to the jury for clarification prior to the jury's discharge. In addition, neither SMC nor Taha have argued that a new trial is in order as a result of the inconsistent verdicts. Taha merely seeks a remand, so the discharged jury somehow would have "the opportunity to clarify who or what it believed." *DeFeliciano* further parallels the case before us in that here Taha also chose not to appeal the judgments in favor

---

*Nut House v. Holiday Hardware Corp.*, 825 F.2d 1351, 1354 (9th Cir.1987) (holding that a party's failure to object to an inconsistent verdict did not result in a waiver of that issue on appeal).

of the named employee defendants. Based on the circumstances in this case, it is "procedurally fair" to address the merits of SMC's contentions, especially given the absence of a guiding court rule. Most importantly, though, allowing Taha to prevail in this case based on the dissent's waiver argument would produce a result that is directly contrary to the law—a judgment in favor of Taha based on woefully insufficient evidence and at odds with the jury's other legal conclusions. *See Los Angeles Nut House,* 825 F.2d at 1356 (disfavoring the "waiver" theory because it permits a result contrary to the law). We refuse to accept such an outcome under the present circumstances.

Moreover, the cases cited by the dissent have little persuasive value because there is no counterpart to FRCP 49(b) in the Maryland Rules. By virtue of FRCP 49(b), federal trial judges and parties alike are on notice that a court must respond to verdict inconsistencies before the jury is discharged. *See White v. Celotex,* 878 F.2d 144, 146 (4th Cir.1989) (stating that the waiver rule is "mandated" out of "[p]roper respect" for FRCP 49(b)); *see also Lockard v. Missouri Pac. R.R. Co.,* 894 F.2d 299, 304 (8th Cir.1990) (stating that the purpose of FRCP 49(b) is to allow the original jury to eliminate any inconsistencies). Maryland trial judges and the parties before them, on the other hand, have not received such specific guidance from the Maryland Rules. In the absence of a rule requiring trial judges to resolve verdict inconsistencies prior to the release of the jury, the parties in Maryland courts should not be precluded from the raising the issue of irreconcilably inconsistent verdicts by post-judgment motion.[10]

---

**10.** The dissent would advocate not reaching the central issue in this case, the very reason why we issued a writ of certiorari, because SMC did not voice a timely objection at trial. As we have stated, however, this Court "has discretion to consider issues that were not preserved." *Fisher v. State,* 367 Md. 218, 238, 786 A.2d 706, 718 (2001) (discussing Maryland Rule 8–131). Following the denial of its timely post-judgment motion, SMC appealed the issue of irreconcilably inconsistent verdicts twice, and this Court twice issued a writ of certiorari to resolve

▉ Because, as we have held, the jury verdicts in this case were irreconcilably inconsistent, the Circuit Court should have set aside the judgment as to SMC. We must point out, however, that SMC selected an inappropriate, although not fatally so, post-judgment instrument for challenging the jury verdicts in this case. Following the Circuit Court's entry of judgment against SMC but in favor of the Wylie–Forth and McGovern, SMC filed a Motion for Judgment Notwithstanding the Verdict pursuant to Maryland Rule 2–532. Under that Rule, however, a party may move for judgment notwithstanding the verdict "only if that party made a motion for judgment at the close of all the evidence and *only on the grounds advanced in support of the earlier motion.*" Maryland Rule 2–532(a) (emphasis added). When SMC moved for judgment at the close of the evidence, the jury, of course, had not rendered a verdict and the issue of inconsistent jury verdicts could not have been raised at that time. Having not raised the issue in its motion for judgment, SMC should not have relied upon Rule 2–532 as the basis for its post-judgment motion.

▉ Nevertheless, as we recognized in *Allstate Ins. Co. v. Miller,* 315 Md. 182, 189, 553 A.2d 1268, 1271 (1989), a timely motion for judgment notwithstanding the verdict, which seeks revision of a final judgment, may "invoke the court's revisory power under Md. Rule 2–535(a)." [11] *See also* Maryland Code, § 6–408 of the Courts & Judicial Proceedings Article (2002).[12]

---

the matter. Had the issue of irreconcilably inconsistent verdicts been waived, and it has not, we would have exercised our discretion in this case to resolve this important question of public policy and to provide guidance to the trial courts.

11. Maryland Rule 2–535(a) states in relevant part: "On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment. . . ."

12. Section 6–408 of the Courts & Judicial Proceeding Article provides: For a period of 30 days after the entry of judgment, or thereafter pursuant to a motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment

This holds true, even if the grounds for the motion had not been advanced in support of a motion for judgment at the close of all the evidence. *Id.* In the case *sub judice,* SMC's motion for judgment notwithstanding the verdict sought revision of the Circuit Court's judgments entered against SMC but in favor of its named employees. Although a motion for judgment notwithstanding the verdict was not the proper instrument for challenging the jury verdicts, the motion nevertheless operated to invoke the court's revisory power under Maryland Rule 2–535(a).[13]

The scope of a court's power under Rule 2–535(a) is broad. In its discretion, a court may modify a judgment if a party files a motion seeking to revise or set aside that judgment within 30 days after its entry. *Haskell v. Carey,* 294 Md. 550, 558, 451 A.2d 658, 663 (1982) ("The purpose of authorizing a trial court to exercise broad discretion to revise unenrolled judgments is to insure that technicality does not triumph over justice."); *Hardy v. Metts,* 282 Md. 1, 5–6, 381 A.2d 683, 686 (1978) ("After a judgment which is final for appeal purposes is entered, the question whether it should or should not be vacated in whole or in part by the trial court under [the predecessor to Rule 2–535] rests for the next thirty days in the discretion of that court."), *superceded by statute*

---

only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

13. SMC's filings comport with the timing requirements of the Maryland Rules. On July 9, 2002, the Circuit Court entered judgment against SMC and in favor of the other named defendants, issued a notice of that judgment, and indicated those actions in the docket. Ten days later, on July 19, 2002, SMC filed its post-judgment motion, in which it argued that the jury verdicts were irreconcilably inconsistent. Because this motion was filed within 10 days after the judgment, it stayed the timing for appeal. *See Unnamed Attorney v. Attorney Grievance Comm'n,* 303 Md. 473, 486, 494 A.2d 940, 946–47 (1985); *Pickett v. Noba, Inc.,* 114 Md.App. 552, 557, 691 A.2d 268, 270 (1997) ("If a motion [under Rule 2–535] is filed within ten days of judgment, it stays the time for filing the appeal...."). The Circuit Court denied SMC's post-judgment motions on October 15, 2002, rendering its July 19 judgments final. The next day, SMC timely filed its notice of appeal.

*on other grounds as stated in Stinnett v. Cort Furniture Rental,* 315 Md. 448, 554 A.2d 1226 (1989); *International–Industrial Developers, Ltd. v. Berg,* 269 Md. 250, 251, 305 A.2d 121, 122 (1973); *Hamilton v. Hamilton,* 242 Md. 240, 243, 218 A.2d 684, 686, *cert. denied,* 385 U.S. 924, 87 S.Ct. 239, 17 L.Ed.2d 147 (1966); *Eshelman Motors Corp. v. Scheftel,* 231 Md. 300, 301, 189 A.2d 818, 818 (1963). Although other cases of this Court have characterized the court's discretion to revise a judgment within 30 days as "unrestricted," *see, e.g., Tandra S. v. Tyrone W.,* 336 Md. 303, 313, 648 A.2d 439, 444 (1994) ("A circuit court has unrestricted discretion to revise a judgment within thirty days after it is entered."), *superceded by statute on other grounds as stated in Walter v. Gunter,* 367 Md. 386, 400, 788 A.2d 609, 617 (2002); *Platt v. Platt,* 302 Md. 9, 13, 485 A.2d 250, 252 (1984) (describing the law governing the power of a court over an enrolled decree as "firmly established" and stating that, "for a period of thirty days from the entry of a law or equity judgment a circuit court shall have 'unrestricted discretion' to revise it."); *Maryland Lumber Co. v. Savoy Constr. Co.,* 286 Md. 98, 102, 405 A.2d 741, 744 (1979) ("[I]f a motion to revise or set aside a judgment is filed within 30 days of the entry of a judgment, a trial court has unrestricted discretion to revise the unenrolled judgment and that discretion has to be liberally exercised.") We believe that the term "broad discretion" best describes the nature and scope of a court's power to revise a judgment under Rule 2–535, because a trial court's discretion clearly is subject to appellate review.

■■■ SMC filed its post-judgment motion in this case within 30 days after the entry of the jury verdicts, giving rise to the court's powers to set aside the judgments. Nonetheless, the Circuit Court, failing to exercise its broad discretion, allowed the judgments to stand, even though those judgments reflected irreconcilably inconsistent jury verdicts. In this regard, the Circuit Court erred as a matter of law, and the judgment as to SMC must be set aside.

■ Taha contends that this Court should remand the case for further proceedings in the trial court. Taha, however, has presented, and we have identified, no legal or factual basis for extending the life of his claims. The issues of the liability of Wylie–Forth and McGovern were fully litigated and resolved at trial, and Taha decided not to appeal those judgments. Moreover, Taha failed to raise whatever objections he had to the jury instructions at trial, so those issues are finally resolved as well. If granted a new trial, Taha's only possible path to prove SMC's liability would be through evidence of other SMC employees, a path that had been available at trial and that Taha chose not to follow. *See Great Southwest Fire Ins. Co. v. S.M.A., Inc.,* 59 Md.App. 136, 148, 474 A.2d 950, 956–57 (1984) (holding that evidence available to the appellant at trial did not qualify as "newly discovered" and, therefore, did not provide a basis for a new trial). Finally, Taha has failed to present sufficient evidence from which a jury reasonably could conclude that SMC employees other than the named employee defendants engaged in malicious prosecution. We conclude, therefore, that judgment should be entered in favor of SMC.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER JUDG-MENT IN FAVOR OF APPELLANT. COSTS TO BE PAID BY APPELLEE.*

RAKER, J., with whom BELL, C.J. joins as to Parts I and II only, dissenting.

I respectfully dissent. I would affirm the judgment of the Circuit Court for three reasons. First, appellant has waived any objection to raise an inconsistency in the verdict because appellant did not contemporaneously object at the time the verdict was rendered and before the jury was discharged. Second, because the verdict was in the form of a general verdict, it is not necessarily an inconsistent verdict. Third, Maryland law has long permitted inconsistent verdicts.

## I. Waiver

Southern Management Corporation has waived any objection that the verdict is inconsistent.[14] Southern Management never asked the trial court to have any purported inconsistency resubmitted to the jury for reconciliation. Southern Management never objected to the verdict or brought the inconsistency to the court's attention, even though permitted to do so, until well after the jury had been discharged. Southern Management agreed to the form of the verdict sheet and to the jury instructions. In fact, Southern Management drafted the verdict sheet that was submitted to the jury. At Southern Management's request, the verdict sheet contained three questions; the jury was required to determine whether each of the three defendants was liable for malicious prosecution.[15]

---

14. Appellee argues waiver, but on a different ground than I would find. Appellee argues that Southern Management waived any inconsistency because Southern Management drafted the verdict sheet, and the verdict sheet encouraged or at least permitted an inconsistent verdict. In response, Southern Management maintains that the issue before the Court is the verdict and not the verdict *sheet.* Although the issue on appeal is the consistency of the verdict, courts have found that verdict sheets and jury instructions play a role in the determination of whether apparently inconsistent verdicts are reconcilable. *See Tipton v. Michelin Tire Co.,* 101 F.3d 1145, 1150–51 (6th Cir.1996) (stating that the almost identical instructions on strict liability and negligence "bolster[ed] [the court's] finding that the jury's answers to the interrogatories were inconsistent" where the jury found the defendant liable based on negligence but found the defendant not liable based upon strict liability); *Zhang v. Am. Gem Seafoods, Inc.,* 339 F.3d 1020, 1038 (9th Cir.2003) ("we review the consistency of the jury's verdict 'in light of the instructions given[]'" (quoting *Grosvenor Properties Ltd. v. Southmark Corp.,* 896 F.2d 1149, 1151 (9th Cir.1990))); *Merchant v. Ruhle,* 740 F.2d 86, 91 (1st Cir.1984) (upholding inconsistent civil jury verdicts and finding it significant that the defendant had agreed to instructions allowing the jury to find liability on either of two claims); *S & R v. Nails,* 85 Md.App. 570, 588, 584 A.2d 722, 730 (1991), *rev'd on other grounds,* 334 Md. 398, 639 A.2d 660 (1994) ("[v]iewed in light of the instructions ... the punitive damages verdict is, at best, ambiguous, and, more likely, inconsistent") (emphasis added).

15. The verdict sheet read as follows:

"1. Was the plaintiff, Mukhtar Taha, the victim of malicious prosecution by the defendant Southern Management Corporation?

Significantly, the jury was not instructed that no verdict could be rendered against the employer unless the jury found that Taha was the victim of malicious prosecution by at least one employee.[16] Had Southern Management objected to the instructions, or the verdict before the jury was dismissed, the trial court could have revised the instructions or had the verdict clarified.

Southern Management argues that it challenged the inconsistency at the earliest opportunity. Raising the issue for the first time in a motion j.n.o.v., well after the jury was dismissed, is not the earliest opportunity. The earliest opportunity, as most courts that have considered the waiver argument have found, is before the jury is dismissed, and not at a post-

---

2. Was the plaintiff, Mukhtar Taha, the victim of malicious prosecution by the defendant, Deborah Wylie–Forth?
3. Was the plaintiff, Mukhtar Taha, the victim of malicious prosecution by the defendant, Michael McGovern?
If "Yes" to any defendant, answer Question 4.
4. What amount of damages do you award plaintiff?
A. Economic $_____
B. Non–Economic $_____ "

**16.** The Court of Special Appeals addressed the jury instruction in *Southern Management Corporation v. Taha (Taha I )*, 137 Md.App. 697, 769 A.2d 962 (2001). The court noted as follows:

"Following the bench conference, the jury was specifically instructed that, '[i]f the employee or employees are responsible for the acts about which the complaint is made by the plaintiff, the employer is also responsible since they would have been acting in the course of the employee responsibilities.' That supplemental instruction was accurate but arguably incomplete and, as a result, possibly misleading. Although the court specifically told the jury that Southern would be liable if the jury found McGovern and Wylie–Forth liable, the court never advised the jury of the converse—that Southern's liability, if any, is founded on the conduct of its employees, and if the jury exonerated the two named employees, Southern could not be liable. Even if liability could attach based on the conduct of other employees of Southern who were not sued, the jury was not instructed to consider the conduct of other employees."

*Id.* at 718, 769 A.2d at 974. Had the trial court instructed the jury that liability could not attach to the corporation unless the jury found liability on an employee's part, the issue might have been avoided. Had Southern Management objected to the verdict before the jury was dismissed, the trial court could have brought the alleged inconsistency to the jury's attention and had the verdict clarified.

trial motion. *See, e.g., Babcock v. Gen. Motors Corp.*, 299 F.3d 60, 63–64 (1st Cir.2002); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 726 (4th Cir.1999); *Lockard v. Missouri Pac. R.R. Co.*, 894 F.2d 299, 304–05 (8th Cir.1990); *White v. Celotex Corp.*, 878 F.2d 144, 146 (4th Cir.1989); *McIsaac v. Didriksen Fishing Corp.*, 809 F.2d 129, 134 (1st Cir.1987); *Cundiff v. Washburn*, 393 F.2d 505, 507 (7th Cir.1968). *Cf. Bell v. Mickelsen*, 710 F.2d 611, 616 (10th Cir.1983); *Charles Stores, Inc. v. Aetna Insurance Co.*, 490 F.2d 64, 67–68 (5th Cir.1974); *Fredonia Broadcasting Corp. v. RCA Corp.*, 481 F.2d 781, 796 (5th Cir.1973); *Bayamon Thom McAn, Inc. v. Miranda*, 409 F.2d 968, 973 (1st Cir.1969); *Frankel v. Burke's Excavating, Inc.*, 397 F.2d 167, 170 (3d Cir.1968). It is simply unfair to permit a party to sit back, do nothing, and then raise the issue of inconsistent verdicts for the first time either in a post-trial motion or on appeal. As one court phrased it, non-adherence to the rule of waiver "would countenance 'agreeable acquiescence to perceivable error as a weapon of appellate advocacy.' " *Babcock*, 299 F.3d at 64 (quoting *Merchant v. Ruhle*, 740 F.2d 86, 92 (1st Cir.1984)).

Had the objection to the verdict been brought to the attention of the trial court in a timely manner, the court had several options. For example, the court initially could have avoided the problem entirely if the jury had been instructed that no verdict could be rendered against the employer unless the jury found that an employee had been guilty of malicious prosecution. Southern Management neither sought such an instruction, nor objected to the instructions as given. After the verdict was rendered, the judge, if alerted, could have resubmitted the matter to the jury for clarification.

This Court has adhered continuously to the contemporaneous objection rule. *See Klauenberg v. State*, 355 Md. 528, 540, 735 A.2d 1061, 1067 (1999); *Prout v. State*, 311 Md. 348, 356–57, 535 A.2d 445, 449 (1988); *Hall v. State*, 119 Md.App. 377, 389–91, 705 A.2d 50, 56–57 (1998); *Hickman v. State*, 76 Md.App. 111, 117–18, 543 A.2d 870, 873–74 (1988) (Bell, J.). The Maryland Rules of Evidence provide that error may not be predicated upon a ruling that admits or excludes evidence

unless a party either timely objects to the ruling or makes a timely offer of proof. *See* Rules 5–103 and 4–323. Rule 2–522(c), regarding special verdicts, provides that error may not be predicated upon the submission of issues to the jury unless the party objects before the jury retires to deliberate. One reason underlying the contemporaneous objection rule is to avoid unnecessary appeals by permitting the proponent of the evidence to cure any objectionable defect while the trial is ongoing. *Hall,* 119 Md.App. at 389–90, 705 A.2d at 56. Waiver operates both to promote judicial economy and to prevent a party from taking advantage of an error which could have been rectified by the court if called to its attention in a timely manner. The rule, and the reasons supporting it, support my view that unless a party brings the alleged inconsistency to the court's attention before the jury is discharged, the issue is waived.[17]

The majority of courts that have considered this issue have held that unless a party objects to an inconsistent verdict before the jury is dismissed, any objection on grounds of inconsistency is waived. *Babcock,* 299 F.3d at 63–64; *Austin,* 195 F.3d at 726; *Lockard,* 894 F.2d at 304–05; *White,* 878 F.2d at 146; *McIsaac,* 809 F.2d at 134; *Cundiff,* 393 F.2d at 507. *Cf. Bell v. Mickelsen,* 710 F.2d at 616; *Charles Stores, Inc. v. Aetna Insurance Co.,* 490 F.2d at 67–68; *Fredonia Broadcasting Corp. v. RCA Corp.,* 481 F.2d at 796; *Bayamon Thom McAn, Inc. v. Miranda,* 409 F.2d at 973; *Frankel v. Burke's Excavating, Inc.,* 397 F.2d at 170. "[I]n most courts, even flatly inconsistent verdicts may form the basis for a valid federal judgment if the parties fail to object to a verdict prior to the jury's dismissal." S. Martin, *Rationalizing the Irrational: The Treatment of Untenable Federal Civil Jury Verdicts,* 28 CREIGHTON L.REV. 683, 728 (1995).

---

**17.** Even if a strict waiver rule should for some policy reason not be applied in every circumstance, it should be applicable to this case because this is not a complex case, nor one where the alleged inconsistency was not immediately apparent when the verdict was rendered and before the jury was discharged.

In sum, Southern Management waived its right to complain that the jury verdict was inconsistent. A party cannot be permitted to take advantage of an error which could have been rectified by the court if called to its attention in a timely manner.

## II. The Verdict Form—General versus Special Verdicts

Courts have treated inconsistent civil jury verdicts in a variety of ways, partially dependent upon the particular procedure used to obtain the jury's findings. A civil verdict may be received in different ways: First, a general verdict may be received; second, a special verdict may be used; and third, a general verdict may be supplemented by special interrogatories, thereby combining features of a special verdict and a general verdict.

The Federal Rules of Civil Procedure explicitly address special verdicts and general verdicts with interrogatories. Rule 49(a) of the Federal Rules of Civil Procedure governs the use of special verdicts in federal courts.[18] The Maryland Rules of Procedure also permit the court to pose specific questions to the jury, known as special verdicts. *See* Rule 2–522(c), derived from Federal Rule 49(a); *Owens–Corning Fiberglas Corp. v. Garrett*, 343 Md. 500, 525, 682 A.2d 1143, 1155

---

**18.** Rule 49(a) reads as follows:

(a) Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

(1996) (noting that Rule 2–522 gives trial judge authority to design submissions to the jury); *Kruszewski v. Holz,* 265 Md. 434, 446, 290 A.2d 534, 541 (1972) (noting that trial judge's authority to submit a case to the jury for a special verdict is conferred by rule). In returning a special verdict, the jury makes factual findings and the court applies the law to those facts as found by the jury. In addition, courts may present to the jury written interrogatories on issues of fact, the decision of which is necessary to the verdict, but still permit the jury to return a general verdict. With this procedure, elements of a special verdict and general verdict are employed at the same time.

Verdicts are usually returned in the form of a general verdict in most courts. *See Portage II v. Bryant Petroleum Corp.,* 899 F.2d 1514, 1519 (6th Cir.1990); *Guidry v. Kem Mfg. Co.,* 598 F.2d 402, 405 (5th Cir.1979). The jury simply announces in whose favor it finds, and if for the plaintiff, in what amount. General verdicts provide little explanation for the decision, and thus, if a general verdict appears to be inconsistent, there is little basis to determine whether that verdict was the result of rational decision making, or if it was based on sympathy for one party, confusion, mistake, or nullification. It has been said of the general verdict that it "is as inscrutable and essentially mysterious as the judgment which issued from the ancient oracle of Delphi." *Skidmore v. Balt. & Ohio R.R. Co.,* 167 F.2d 54, 60 (2d Cir.1948) (Frank, J.).

The jury plays a simple factfinding role when it renders a special verdict, whereas the jury applies the law to the facts and announces legal conclusions when it renders a general verdict. As the Ninth Circuit Court of Appeals explained in *Zhang:*

"A jury may return multiple general verdicts as to each claim, and each party, in a lawsuit, without undermining the general nature of its verdicts. Although some general verdicts are more general than others, encompassing multiple claims, the key is not the number of questions on the verdict form, but whether the jury announces the ultimate legal result of each claim. If the jury announces only its

ultimate conclusions, it returns an ordinary general verdict; if it makes factual findings in addition to the ultimate legal conclusions, it returns a general verdict with interrogatories. If it returns only factual findings, leaving the court to determine the ultimate legal result, it returns a special verdict."

*Zhang*, 339 F.3d at 1031 (citation omitted).

The *Zhang* court further explained that the form of a verdict has important implications for determining whether verdicts are irreconcilably inconsistent. *Id.* In addressing the alleged inconsistency between two legal conclusions—a finding of liability for a corporate defendant and a finding of no liability for the corporation's employee, the court in *Zhang* distinguished this inquiry from its task in reviewing whether *special verdict* answers support the ultimate judgment of the trial court. *Id.* at 1032–33. In cases involving the latter inquiry, "the real question [is] whether the jury's factual findings require[] judgment for the plaintiff or the defendant, a question that is simply irrelevant where ... no factual findings are at issue." *Id.* at 1033.

In *S & R v. Nails*, 85 Md.App. 570, 584 A.2d 722 (1991), *rev'd on other grounds*, 334 Md. 398, 639 A.2d 660 (1994), the Court of Special Appeals considered whether a special verdict could be reconciled with a general verdict. The court pointed out that a special verdict and a general verdict are "irreconcilably defective" where "the answer to one of the questions in a special verdict form would require a [general] verdict in favor of the plaintiff and an answer to another would require a [general] verdict in favor of the defendant." *Id.* at 590, 584 A.2d at 731. Because *S & R* dealt with the consistency of a factual finding and a legal conclusion, that case, contrary to the majority's assertion, does not stand for the broad proposition that apparently inconsistent civil jury verdicts are necessarily defective.

The majority improperly characterizes the jury verdict in the instant case as a special verdict. *See* maj. op. at 479 (referring to "the text of the special verdict form"). The

verdict in the instant case is a general verdict, not a special verdict. The jury merely determined whether each of the three defendants was liable. Unlike the verdicts in *S & R*, the verdict in this case was not irreconcilably inconsistent because the jury made no factual findings that required judgment for Southern Management.

The cases cited by the majority involving the doctrine of respondeat superior do not establish that the jury's exoneration of an employee can never be consistent with a verdict of liability for the corporate defendant. The cases cited by the majority involve situations where corporate liability was based solely on the doctrine of respondeat superior and only *one* employee's actions grounded the claim. *See* maj. op. at 488–89. *Zhang* is more instructive regarding the interplay of the doctrine of respondeat superior with apparently inconsistent general verdicts. In *Zhang*, the Ninth Circuit Court of Appeals contemplated that general verdicts might be alleged to be inconsistent in three ways. 339 F.3d at 1032. Two of those ways include situations in which the jury returns "a general verdict that, under the facts of the case, implies a lack of evidence underlying another general verdict" or the jury returns "two general verdicts that, under any facts, seem to be legally irreconcilable." *Id.* The court categorized the split verdict between the corporate defendant and the employee as the former scenario because "it is legally possible for a corporation to be held liable for discrimination while its agent is exonerated (because, among other reasons, the corporation may have acted through other agents)." *Id.*

Although Southern Management raises the question of whether, *as a matter of law*, the jury verdict was irreconcilably inconsistent, underlying its claim of inconsistency is a presumption that Taha failed to produce sufficient evidence of tortious conduct by employees other than Wylie–Forth and McGovern. As the Court of Special Appeals phrased it in *Taha I*, 137 Md.App. at 721, 769 A.2d at 976, "[a]ppellant explains that, based on well-established principles of respondeat superior, Southern, as principal, cannot be liable here, because the two employee-defendants were found not culpable,

*and* the evidence did not show that any other corporate employees committed the tort" (emphasis in original). The court went on to conclude that "the verdict of liability against Southern cannot stand, given the jury's exoneration of the two individual employees, *if* the claim against Southern was based solely on the conduct of those two individuals." *Id.* at 724, 769 A.2d at 978 (emphasis in original).

The majority in the instant case states that "the gravamen of the case was limited to the two named employees," maj. op. at 485, and embraces the Court of Special Appeals' pronouncement that Taha "proceeded against Southern for the tort of malicious prosecution based *only* on the conduct of McGovern or Wylie–Forth, not other Southern employees who were not sued."[19] *Taha I,* 137 Md.App. at 728, 769 A.2d at 980 (emphasis added). The majority further intimates that a jury could not have found that Southern Management employees other than the two who were sued were acting within the scope of their employment. Maj. op. at 485–86. This is pure conjecture. Whether an individual's conduct falls within the scope of employment is within the province of the jury. *Sawyer v. Humphries,* 322 Md. 247, 260–61, 587 A.2d 467, 473–74 (1991). If Southern Management believed that there was insufficient evidence of these facts, or any other facts, it should have raised its concerns at the close of the evidence and before the jury retired to deliberate.[20] In denying the motion j.n.o.v., the trial judge found that there was sufficient

---

**19.** Taha presented evidence of wrongdoing by Udit and Martinez, two other employees, although he did not sue them. *See Taha I,* 137 Md.App. at 730, 769 A.2d at 981.

**20.** The United States Court of Appeals for the Ninth Circuit in *Zhang v. American Gem Seafoods, Inc.,* 339 F.3d 1020, 1032 (9th Cir.2003), held that the defendants had waived any argument that the verdict was inconsistent. The court noted that the defendants missed the opportunity to challenge whether there was evidence to support a split verdict by not raising the issue at the close of the evidence, when the plaintiff could have, if necessary, introduced more evidence about the corporate defendants' liability. *Id.* at 1033–34. The court concluded that "not having raised the issue before the matter was submitted to the jury, the appellants cannot complain of a defect in proof for the resulting verdict." *Id.* at 1034.

evidence in the record from which the jury could have arrived at its verdict.

The United States Supreme Court has held that where a jury renders apparently inconsistent verdicts, it is the court's duty to search for a logical interpretation of those verdicts. The Court addressed this issue in *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines,* 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962), in which a plaintiff longshoreman brought suit against shipowners, and the defendant shipowners impleaded plaintiff's employer, a stevedoring contractor. *Id.* at 357, 82 S.Ct. at 782, 7 L.Ed.2d at 802. Plaintiff was injured when two bands holding bales of burlap broke while the plaintiff was unloading the bales on defendants' ship. *Id.* at 356, 82 S.Ct. at 782, 7 L.Ed.2d at 802. The jury found the shipowners liable for the plaintiff's injuries under theories of negligence and unseaworthiness, and found the stevedoring company not liable, *id.* at 357, 82 S.Ct. at 782, 7 L.Ed.2d at 802, even though the stevedoring company owed contractual duties to the shipowners much like a manufacturer's warranty of its product, *id.* at 359 n.1, 82 S.Ct. at 783 n. 1, 7 L.Ed.2d at 803 n. 1. The Court held that the jury's verdict was not logically inconsistent because the jury may have found that the shipowners were negligent in failing to inspect the bands on the bale that fell—a duty not subsumed under the stevedoring company's contractual obligations to the shipowners. *Id.* at 364, 82 S.Ct. at 786, 7 L.Ed.2d at 806–07. The Court announced that "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Id.* at 364, 82 S.Ct. at 786, 7 L.Ed.2d at 807. *See also Gallick v. Balt. & Ohio R.R. Co.,* 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618, 627 (1963) (noting that courts must "attempt to harmonize the [jury's] answers" when faced with apparently inconsistent verdicts); *Zhang,* 339 F.3d at 1038 (quoting *Gallick* and *Atlantic & Gulf Stevedores, Inc.* and stating that litigants challenging apparently inconsistent verdicts "bear a high burden to establish an irreconcilable inconsistency").

The general verdicts in the instant case are not irreconcilably inconsistent or defective. The trial court properly denied Southern Management post-judgment relief partly because the court found that there was evidence to support a verdict of corporate liability even if the employees who had been sued were found not liable. The fact that the jury concluded that two of Southern Management's employees were not liable for malicious prosecution does not compel the conclusion that Southern Management, as a matter of law, cannot be held liable.

### III. Inconsistent Verdicts Generally

It has long been the law in Maryland that verdicts may be inconsistent. This is so in both civil and criminal cases. *See, e.g., Garrett,* 343 Md. at 521, 682 A.2d at 1153; *Hoffert v. State,* 319 Md. 377, 384–85, 572 A.2d 536, 540 (1990); *Wright v. State,* 307 Md. 552, 576, 515 A.2d 1157, 1169 (1986); *Shell v. State,* 307 Md. 46, 54, 512 A.2d 358, 362 (1986); *Mack v. State,* 300 Md. 583, 594, 479 A.2d 1344, 1349 (1984); *Ford v. State,* 274 Md. 546, 552–53, 337 A.2d 81, 85–86 (1975); *Johnson v. State,* 238 Md. 528, 541, 545, 209 A.2d 765, 771, 773 (1965); *Ledbetter v. State,* 224 Md. 271, 273–75, 167 A.2d 596, 597–98 (1961); *Williams v. State,* 204 Md. 55, 64, 102 A.2d 714, 718 (1954); *Leet v. State,* 203 Md. 285, 293–94, 100 A.2d 789, 793–94 (1953); *Zachair v. Driggs,* 135 Md.App. 403, 440 n. 17, 762 A.2d 991, 1011 n. 17 (2000). We said in *Hoffert,* that while inconsistent verdicts in a court trial are not tolerated,

> "inconsistent verdicts by a jury 'are normally tolerated....' This is so because of 'the unique role of the jury, [and has] no impact whatsoever upon the substantive law explicated by the Court.' Due to the singular role of the jury in the criminal justice system, 'there is a reluctance to interfere with the results of unknown jury interplay, at least without proof of "actual irregularity." ' "

319 Md. at 384, 572 A.2d at 540 (citations omitted). We have emphasized that "the jury retains its power to err, either fortuitously or deliberately, and to compromise or exercise lenity." *Mack,* 300 Md. at 597, 479 A.2d at 1351. A jury

verdict will not normally be reversed even if a verdict is inconsistent in the sense that the factual findings cannot logically be reconciled with each other. *See Garrett,* 343 Md. at 521, 682 A.2d at 1153.

Courts permit inconsistent verdicts based on a recognition of the unique role of the jury. Juries render verdicts for a variety of reasons, including mistake, the application of lenity, nullification, or compromise to reach a unanimous verdict. *See Shell,* 307 Md. at 54–55, 512 A.2d at 362 (citing *Ford,* 274 Md. at 553, 337 A.2d at 85–86). Sometimes juries render verdicts based on an alternate, but supportable, view of the evidence presented at trial. *See, e.g., Gallick,* 372 U.S. at 120–21, 83 S.Ct. at 666–67, 9 L.Ed.2d at 627–28; *Atl. & Gulf Stevedores, Inc.,* 369 U.S. at 364, 82 S.Ct. at 786, 7 L.Ed.2d at 806–07.

The majority overlooks more than one procedural error on the part of Southern Management. In order to reach the merits, the majority has to pull the corporation's "chestnuts out of the fire" and overlook the waiver of the issue and the filing of an improper j.n.o.v. motion. *See Stockton v. State,* 107 Md.App. 395, 397, 668 A.2d 936, 937 (1995) (noting that courts are reluctant "to forgive the non-diligence of attorneys by pulling their neglected chestnuts out of the fire for them"). The exercise of our discretion to address the issue in this case will lull lawyers into a false sense of security that the Court will reach the issue despite procedural violations and improper appellate records. *See Austin v. State,* 90 Md.App. 254, 271, 600 A.2d 1142, 1150–51 (1992). The majority justifies the result based upon a perceived need to reach an important issue of public policy. This case is merely a fact-specific case which turns on procedural errors, a factual dispute as to whether the verdicts were inconsistent, and whether, even if apparently inconsistent, under the form of the verdict, the verdicts could be reconciled.

Under the posture of this case, the judgments did not reflect irreconcilably inconsistent verdicts that must be set aside as a matter of law. I would affirm the trial court's

denial of appellant's post-trial motions. Accordingly, I respectfully dissent.

Chief Judge BELL authorizes me to state that he joins in Parts I and II of this dissenting opinion.